## GETCHELL *vs.* JEWETT.

In equity, relief will be given against mere lapse of time, where that is not of the essence of the contract ; if the party seeking relief has acted fairly; unless the delay of performance on his part has been so long as to justify the inference that he had abandoned the contract.

It is not necessary, in order to found a decree for specific performance of a contract, that the breach be such as would support a claim for damages at law.

The want of mutuality of contract is no objection in equity, if it has been signed by the party sought to be charged.

THIS was a bill in equity, containing the following allegations. The plaintiff, being indebted to one *Johnson* in the sum of two hundred dollars which he could not then pay, obtained of *Johnson* the promise of a credit of six months for one half of the debt, and twelve months for the other half, upon condition of furnishing a satisfactory surety. The defendant, at the plaintiff's request, agreed to become his bondsman ; and notes were accordingly given to *Johnson* on the 18th day of *September* 1822. To secure the defendant against this liability, and also to secure the payment of fifty dollars claimed to be due from the plaintiff to the defendant, the plaintiff on the same day gave to the defendant an absolute deed of a moiety in common of a lot of land and buildings in the town of *Gardiner*. It was at the same time agreed between them, that if the plaintiff should within six months pay to the defendant the fifty dollars due him, with interest, and should pay and take up the notes given to *Johnson* at or before the times they should become due, and save the defendant harmless therefrom ; and also if the plaintiff should within thirty days give the defendant satisfactory security to indemnify him against a mortgage which the plaintiff and one *Ira Getchell* had given upon the same land ; that then the defendant would release and reconvey to the plaintiff his right and title to the premises , which the plaintiff alleged to be worth three hundred and fifty dollars. This agreement was reduced to writing, bearing date *September* 19, 1822 ; on which day the plaintiff, to secure the defendant against the mortgage, gave him a further deed, conveying a pew in the church in *Gardiner*, and assigned to him a note of hand

against *Ira Getchell*, for fifty dollars and eleven cents. The receipt of these indemnities the defendant acknowledged, in a memorandum at the foot of the same agreement, and therein stipulated that, if the preceding terms were complied with, he would also reconvey the pew, and return whatever he might have received in part of *Ira's* note.

One of the first notes to *Johnson* was paid by the plaintiff on the 18th of *Sept.* 1823. The other was paid by the defendant, without giving notice of his intention to the plaintiff, and after the plaintiff had procured an extension of the time of payment, which was not then expired. On the same 18th of *Sept.* 1823. the plaintiff deposited in the *Gardiner* bank one hundred and fifty nine dollars for the use of the defendant, who was notified of the same ; and directed the cashier to pay it to the defendant, on his executing a release of the premises.

In *December* following the defendant received twenty-two dollars and thirty-nine cents of the administrator of *Ira Getchell's* estate, in part of his note. On the 26th of *April* 1824, the plaintiff tendered to the defendant one hundred and nine dollars and sixty three cents for the money he had paid to *Johnson*, with interest ; and fifty four dollars and eighty seven cents for the debt claimed by the defendant as due to himself, after deducting the money he had received of *Ira Getchell's* estate ; also ten dollars for the supposed amount of a bill of costs incurred by him in a writ of entry he had recently commenced against the plaintiff, to dispossess him of the same premises ; and six dollars and eighty nine cents as a compensation for his own trouble in the business, and to make up any errors of calculation ; the defendant having taken the rents and profits of the pew, from the date of his deed ; and thereupon demanded a release and reconveyance of the property ; which the defendant refused. The bill prayed for a specific performance of the contract ; and that the plaintiff might be restored to his title to the premises.

To so much of the bill as set forth the conveyances made by the plaintiff to the defendant, and claimed title in the former to redeem, the defendant demurred in law ; shewing for causes ;— 1st, that the plaintiff did not shew himself to be a mortgager ; nor

that the defendant had possession of the premises, or had ever entered for condition broken ;—2d, that it did not appear that the plaintiff had any right in equity of redeeming the property, by virtue of any deed of defeasance, or other instrument under seal ;—3d, that the bill shewed no sufficient cause for a decree for specific performance.

And to the residue of the bill he answered, that he was obliged himself to pay the first note to *Johnson* after it became due, and after notice to the plaintiff that he had been called upon for payment, and after the plaintiff's reply that he was unable to pay it ; denying that the plaintiff had procured an extension of time ; and so the condition had not been performed by the plaintiff, upon which, by the agreement, the reconveyance was made to depend. He further insisted that the agreement was not mutual, as the plaintiff had not bound himself to indemnify the defendant, nor to pay him the debt of fifty dollars. He further alleged that long after the plaintiff's default, viz. *Oct. 20, 1823,* the other moiety of the land and buildings was put at sale by auction, at an administrator's sale ; and that not being suitable or conveniently situated for a tenancy in common, the defendant had purchased it for one hundred and twenty one dollars ; which was more than it was worth ; and more than the plaintiff, or any other person, would have given for it, to become a tenant in common with another ; and that if now obliged to reconvey the other moiety to the plaintiff, this moiety would become of little value, and the defendant unjustly be subjected to loss. And as to the money deposited in the bank, and the tender, and demand of a deed, he alleged that they were too late ; being after the forfeiture of the conditions in the agreement.

To this answer the plaintiff excepted as insufficient ;—1st, because the defendant relied on the lapse of the times of payment of the plaintiff's debts ; whereas that was not a material fact in the determination of his rights under the bill ; part of the money having been actually paid, and the residue tendered, and now brought into court ;—2d, because the defendant alleged that he was ready and desirous to perform his part of the agreement, but without alleging that he gave the plaintiff notice of any such

desire, or intimation that he wished for a literal performance of the conditions ;—3d, because the defendant was not destitute of a remedy, as he has alleged, for want of mutuality in the agree- ment ; the original evidence of his debt against the plaintiff still subsisting ; and his remedy at law being perfect for the money he might expend as surety, by his having signed the notes in that character ;—4th, because no sufficient reason was shewn by the defendant for refusing to receive the money tendered.

The arguments, of which the following is a brief summary, were delivered in writing, after the last term.

*Allen*, for the plaintiff, contended that this was a case within the jurisdiction of this court ; it being a contract in writing, upon which there was not " a plain, adequate, and complete remedy at law." The answer agrees with the bill in admitting the fact that the first note was not taken up by the plaintiff, but was paid by the defendant some days after it became due. But this fact rather gives, than takes away chancery jurisdiction ; for if the money had been paid at the day, by the plaintiff, he would then have had a plain and adequate remedy at law, at least for damages to the amount of his loss. But now he has none. It is difficult to imagine a case more strongly demanding the exercise of the equitable powers of this court.

That time is not of the essence of a contract, considered in equity, has long been established in England ; and the same principle is most explicitly recognized and adopted in *Brazier v. Gratz* 6 *Wheat.* 528, 553. And though the *dicta* of some English chancellors seem to treat the strict observance of the time of payment as essential in a certain degree; yet it will be found, on examination of the cases, that the remedy by bill has never been withheld, where the delay was slight, as in this case ; or where the neglect was not such as to furnish grounds to presume that the party, for the time being, at least, had abandoned the inten- tion of complying with the stipulations on his own part ; and consequently had waived his right of demanding performance from the other party. This is more especially the case where no change has been made in the situation and circumstances of

the party, between the time stipulated, and the time of actual performance. *Waters v. Travis* 9 *Johns.* 450, and cases there cited.

As to the change of circumstances, mentioned in the answer, resulting from the defendant's purchase of the other moiety of the land ; it should be observed that before that time the plaintiff had deposited the money in the bank, and given him notice of the deposit. He purchased, therefore, with full knowledge of the plaintiff's claim and intention to redeem. If the premises are of the value alleged in the bill, it will be manifestly unjust for the plaintiff to retain them for the very small sum he has advanced. If they are of as little value as the defendant pretends, he will not be injured by receiving back his money with interest, and a reasonable reward, and reconveying the estate.

Nor are these to be regarded as distinct and independent transactions, as the defendant in his answer alleges. The deed of the land, it is true, bears date on the 18th of *September* ; and the contract to reconvey, on the 19th. But on this latter day the deed of the pew was given ; and reference is made to a reconveyance of the whole property, on conditions. The original purpose, also, for which the bill alleges the first deed to have been given, is not denied in the answer. Evidently, therefore, the whole constituted but one transaction.

The objection of the want of mutuality in the contract, is equally unfounded. The defendant, as soon as he paid the money to *Johnson*, might have had his action for it ; and he still held his security for the fifty dollars. He had also his remedy, by writ of entry, for the estate conveyed ; in which he must have had judgment at last, the matters in the bill affording no defence at law. It will also be perceived that here has been a part performance, on the side of the plaintiff, by the payment of $100. The defendant, to have even a plausible pretence for holding the property, ought at least to have paid the whole sum to *Johnson*. The contract, in its strictness, gave the property to the defendant, only in case he was obliged to pay the whole sum. If it be not so, then, if only a single dollar was paid by him, he might retain a property worth hundreds. To prevent such manifest

injustice, was the intention of the legislature, in confering on this court the beneficial powers resorted to by the bill.

*Evans,* for the defendant, considered the two first causes of demurrer as conceded by the plaintiff; it not being contended that the conveyances of the 18th of *September* constituted a mortgage.

The rights of the parties depend therefore solely on the written contract of the 19th of *September* ; which is subsequent to the conveyances recited in the bill; and is in itself distinct, unambiguous, intelligible, and independent of all anterior transactions between the parties. All such transactions are wholly merged in the new agreement, deliberately put in writing ; and can have no operation to vary, control, enlarge, or explain it. *Mumford v. McPherson,* 1 *Johns.* 418. *Vandervo, rt v. Smith,* 2 *Caines* 161. *Haynes v. Hare* 1 *H. Bl.* 664. *Parkhurst v. Van Cortlandt,* 1 *Johns. Chan. Ca.* 282. The facts alleged in the bill, to which the demurrer extends, are of this character ; and being therefore in operative, as they regard the subsequent agreement, are unnecessarily recited, and impertinent. At most they can be regarded only as inducements to the written contract itself, to which the jurisdiction of the court is expressly limited by statute ; and with the recital of which the bill ought to have commenced. 2 *Harrison's Chan.* 334, 336. *Equity Draftsm.* 74 & seq. The causes of demurrer, therefore, being well assigned, the parts demurred to may be treated as stricken out of the bill.

As to the answer ; it is to be taken as true, because it is not traversed, nor put in issue by a replication. 2 *Mad. Ch.* 440. Nor do the exceptions invalidate it, because they do not shew that any part of the bill is unanswered, or that the facts are insufficiently stated. *Cooper's Eq.* 319, 32. 2 *Mad. Ch.* 347. But upon the facts in the answer, the defendant is not bound to a specific performance of the contract of *September* 19, 1822, for the following reasons.

1. Because the plaintiff did not perform on his part the conditions of the written contract, which were to be performed on the 19th of *March* 1823, and at no other time.

At law, the performance of precedent conditions on the part of the plaintiff is an indispensable prerequisite. *Appleton v. Crowningshield*, 3 *Mass.* 443. *Cutter v. Powell*, 6 *D. & E.* 324. *Cook v. Jennings*, 7 *D. & E.* 380. *Mounsey v. Drake*, 10 *Johns.* 27. *Berry v. Young*, 2 *Esp.* 640, *note n.* And if an action at law for damages cannot be sustained, neither will equity, in general, compel a specific performance. If it were otherwise, contracts would be binding or invalid, not according to the intent of the parties, but according to the form of remedy which might be adopted. Chancery cannot make that a binding contract, which is not such at law. It can no more compel a party to perform that which he did not engage to do, than courts of law can give damages in a similar case. When the right exists, the remedy may be had in either court. When the remedy at law is gone, it is because the right has ceased ; and when that is once gone, it is gone forever ; chancery can neither create nor revive it. 2 *Powell on Contr.* 17, 19, 21., *Whitnel v. Farrell*, 1 *Ves.* 256. *Reeve's Dom. Rel.* 382, 383, 386.

The exceptions to this general rule are in favor of the remedy at law ; by which damages are sometimes given, in cases where equity would not decree a specific execution of the contract. 1 *Harrison's Chan.* 29. *Doug.* 277. 1 *Wheat.* 204. *Cannel v. Buckle*, 1 *P. Wms.* 243. *Dwight v. Pomroy & als.* 17 *Mass.* 326. The rule itself is laid down in broad terms by *Ld. Raymond* in the case of *Dr. Bettesworth v. The Dean & Chapter of St. Paul's Select Ch. Ca.* 68; and although its universality, as there stated, is questioned by *Mr. Maddocks*, 1 *Mad. Chan.* 262, the cases cited by him, from 2 *Sch. & Lef.* 348,684, notwithstanding the high authority of *Ld. Redesdale*, have been regarded merely as decisions upon a local equity, applicable only to the particular tenure of estates in Ireland. *Baynham v. Guy's Hospital*, 3 *Ves.* 297. These cases therefore do not limit the general proposition of *Ld. Raymond* ; nor is its principle, as applicable to the present case, in any manner affected by the other exceptions, recognized in the books ; as, agreements arising under the act of the court itself ; covenants of a feme covert, being a minor, to convey to her husband ; and others of the like character. 2 *Powell on Contr.* 14, 15. 1 *Mad. Chan.* 362.

The doctrine that time is not of the essence of a contract, in equity, depends wholly on the case of *Gibson v. Patterson*, 1 *Atk.* 12, which is the authority uniformly cited to support it. But this doctrine, in England, is now considered as exploded. *Newland* 242 1 *Mad. Chan.* 415. And abundant authorities establish the contrary position, that time can no more be dispensed with in equity, than at law. *Harrington v. Wheeler* 4 *Ves. jr.* 689. *Spurrier v. Hancock ib.* 667. *Newman v. Rogers* 4 *Bro. Ch. Ca.* 391. 4 *Ves. jr.* 671. *Marquis of Hertford v. Boore* 5 *Ves.* 720. *Guest v. Homfray ib.* 822. *Alley v. Deschamps* 13 *Ves.* 228. *Popham v. Eyre Lofft.* 813. *Omeron v. Hardman* 5 *Ves.* 736. The cases in which the want of punctuality in time on the part of the plaintiff, has been dispensed with in equity, and specific performance decreed, are where the delay has been assented to by the defendant ; *Fordyce v. Ford* 4 *Bro. Ch. Ca.* 494. *Pincke v. Curtis ib.* 329. *Newland,* 231. *Seton v. Slade* 7 *Ves.* 265—or where the vendor was dead, and no person could receive the money ; *Vernon v. Stephens* 2 *P. Wms.* 66—or in other similar cases, growing out of the conduct of the parties, or inevitable accident ; 1 *Mad Chan.* 415 ; or depending upon grounds peculiar to the cases themselves ; *Waters v. Travis* 9 *Johns.* 450. But no case can be found where a neglect of the plaintiff to perform his part of the agreement at the given day, unless attended with these mitigating circumstances, has been overlooked in chancery. 1 *M. Ch.* 35. *Eaton v. Lyon* 3 *Ves.* 690. In *Brazier v. Gratz* 6 *Wheat.* 523, cited on the other side, the remarks of the court to this point were not called for by the decision pronounced, which was against sustaining the bill. So in *Hepburn v. Auld* 5 *Cranch* 278 ; where there were also circumstances shewing a waiver by the defendant of punctual performance on the part of the plaintiff.

But if the court of chancery in England would sustain a bill under circumstances like the present ; it would not thence follow that this court has the same power, limited as it is by statute, to bills for the specific performance of written agreements, and to trusts. There, its jurisdiction extends also to all cases of fraud, accident, and mistake ; as well as to other subjects. It will not

be contended that our statute gives greater power over written contracts than is possessed by the court of chancery in England ; yet whenever a contract has there been sustained in equity, which was ineffectual at law, it was by virtue of some other branch of its jurisdiction, not confided to this court. *2 Powell on Contr.* 255. Thus the power to dispense with punctual performance as to time, is referred, in English books, to the head of " accident and mistake." 1 *Mad. Chan.* 35. But as this branch of equity jurisdiction has not been conferred by our statute, it seems to follow that even if the relief prayed for by this bill could be had in England, yet it cannot be granted here.

The object of our statute was not to extend or create rights, nor to vary the engagements of parties ; but to give a new remedy, for rights already subsisting, but for which there was not a " plain, adequate and sufficient" remedy at law. It seeks merely to enforce existing stipulations, in the precise manner defined and agreed by the parties ; but not to compel any man to do that which, of his own accord, he never engaged to do. The defendant in the present case never gave his assent, nor signified his intention to be bound, to convey the premises to the plaintiff, upon any other condition than the payment of the specified sums, at a given day. It is then a conveyance upon those conditions, and none other, that the court has power to compel ; because such, and none other, was the contract. But to compel the defendant to make the conveyance required, is to oblige him to do an act which he never engaged to perform, and to execute a contract, into which he never entered.

2. The defendant ought not now to be required to make the conveyance, because circumstances have taken place, since the breach of the conditions by the plaintiff, which will render such a decree against justice and equity. He has since become the owner of the other moiety of the estate; and this because, being owned in common, it was of little value. But the relief sought by the bill, will place him again in the inconvenient situation from which he has extricated himself by the purchase of the second moiety ; and make him the purchaser of that moiety at a price beyond its just value ; and this, too, to relieve a party whose

neglect and violation of good faith had reduced him to that necessity.

3. The written contract, set forth in the bill, was void for want of mutuality ; it being binding on the defendant alone. *Reeve's Dom. Rel.* 382. *Newland on Contr.* 152. *Lawrenson v. Butler* 1 *Sch. & Lefr.* 20. 1 *Mad. Chan.* 422.

MELLEN C. J. delivered the opinion of the court.

The equity or chancery powers of this court are of a limited character, compared with the vast and extensive jurisdiction of the court of chancery in England ; which exercises its authority in cases of accident and mistake, of account, of fraud, of infants and their interests, of trusts, and in compelling the specific performance of agreements ; and yet, as *Maddock* observes, " according even to this enlarged classification of the subject, it " may not be very obvious how the great multiplicity of doctrines " arising out of the equity jurisdiction can be included." By our laws there are two cases where an equitable power is given to and exercised by this court, and the court of Common Pleas. One is given in the second and third sections of the Act of 1821, *ch.* 50 ; and is exercised in relieving against penalties and forfeitures, and rendering judgment for so much as is due in equity and good conscience ; the other is given in the fourth section of said act ; and is exercised in the total or partial remission of the forfeited penalties of recognizances taken in criminal prosecutions, in actions of *scire facias.* In these two instances the proceedings are at common law. By the act of 1821, *ch.* 39, equity powers are given to the same courts in cases of mortgage ; and in these cases the powers are exercised for the benefit of the mortgagor by a bill in equity ; and the proceedings described in the first six sections, are essentially conformable to chancery practice. But another chancery power was given to the Supreme Judicial Court of Massachusetts on the 10th of *February*, 1818, which they still retain : and similar power was given to this court by the first section of the Act of 1821, *ch.* 50, in these words ;—"Be it enact- " ed, that the justices of the Supreme Judicial Court shall have " power and authority to hear and determine in equity all cases

Getchell v. Jewett.

" of trust, arising under deeds, wills, or in the settlement of
" estates ; and all cases of contract in writing where a party
" claims the specific performance of the same, and in which
" there may not be a plain, adequate and complete remedy at
" law."—The act was passed *February* 20, 1821, and it contains
a proviso that it should not apply to any contracts except those
made in writing, since the 10th of *February*, 1818—the day the
Massachusetts act was passed.

Thus it appears that the only chancery jurisdiction given
exclusively to this court, has relation to trusts arising under
deeds, wills, or in the settlement of estates ; and to the specific
performance of contracts in writing. This jurisdiction is to be
exercised according to the usual modes of proceeding in courts
of chancery, as simplified by the " rules for the regulation of
the practice in chancery," established by the Supreme Judicial
Court of Massachusetts, at *March* term, 1818 ; and which were
adopted by this court in *York*, at *August* term, 1820. As the
plaintiff in his bill has not placed his claim to a specific perform-
ance on the ground that the deeds in question, and the defendant's
agreement, taken in connexion, constitute a mortgage ; and as
it is of no importance whether they do or do not, provided the
plaintiff has equitable ground, independent of that consideration,
on which to claim such specific performance, we overrule the
demurrer, and proceed to examine the cause upon its merits.

Upon the facts appearing in the bill and answer, the defendant
founds two objections to the plaintiff's claim. He urges first that,
as the notes were not paid to *Johnson*, nor the debt due to the de-
fendant, at the days specified in the agreement, this is a failure
fatal to the bill ; and by means of it the defendant is wholly ab-
solved from his engagement. And secondly, that if this omission and
the lapse of time have not absolved him, the circumstances of the
case shew that the plaintiff has no equity, nor any fair claim to a
specific performance as prayed for in his bill.

As to the first point, the defendant's counsel contends that
where a remedy cannot be had by an action at law to recover
damages for a breach of the contract, the court will not compel a
specific performance. In support of this position he cites 1 *Harri-*

Getchell v. Jewett.

son's *Ch. Pr.* 29. Such an action could not be maintained against *Jewett*, because his engagement was to reconvey, provided the plaintiff should make the before mentioned payments at the times appointed ; and this he did not do. The position in *Harrison* is not true in the broad sense in which it is laid down. *Newland,* in his treatise, page 109, says, "there are several species of con-
" tracts which a court of equity will enforce, on which no action
" could be maintained at law to recover damages;"—and he goes on to enumerate many of them. See also *Cannel v. Buckle* 2 *P.*
*Wms.* 244. *Newland* 230. In the case of *Alley v. Deschamps,*
13 *Ves.* 224, which was a bill for specific performance, the Lord Chancellor in delivering his opinion says—" This relief, I have
" formerly observed, was first given upon a legal right, instead of
" damages ; which was followed by another class of cases equally
" clear, that when a party was not able to perform his engagement
" according to the letter of it, if the failure was not substantial,
" the other should not be permitted to take advantage of the strict.
" form." In *Lloyd v. Collet* 4 *Bro.* 469, in note to *Harrington v.*
*Wheeler* 4 *Ves.* 690, the Lord Chancellor held a language more severe. His words are, " Plaintiff says, by my own default this
" contract is void in law ; I cannot succeed at law ; on the con-
" trary, the other party is entitled to recover back the money he
" has paid in expectation of the execution of his contract; there-
" fore an equity arises to me ; an equity out of his own neglect! it
" is a singular head of equity." Comparing this last case, which was decided many years before, with that of *Alley v. Deschamps,* we per-ceive an increasing disposition to extend equitable relief, where a failure in some unimportant particular has occurred, but no substantial injury been occasioned.

It is true that in *Gibson v. Patterson* 1 *Atk.* 12, Lord *Hardwick* seems to have laid down the doctrine, that lapse of time was of no importance ; and to have decreed in favor of a vendor, with-out any regard to his negligence in not procuring his title deeds, and notwithstanding a conveyance within the time limited for the purpose by the articles. But the accuracy of the report is denied ; and in *Lloyd v. Collet* and several other cases, the gen-

erality of the principle laid down by Lord *Hardwicke* has been overruled, and a different one established ; and it seems " now " the acknowledged rule in courts of equity, that where the " party who applies for a specific performance of a contract, " has omitted to execute his part of it for a considerable time " after the day appointed for the purpose, without being able to " assign sufficient reasons to justify or to excuse his delay, the " court will not compel a specific performance of the agree- " ment, considering his conduct to be evidence of his abandon- " ment of it." *Newland* 242. *Lloyd v. Collet* 4 *Ves.* 690. *Harrington v. Wheeler* 4 *Ves.* 686. *Marquis of Hertford v. Boore, Astor & Boore* 5 *Ves.* 719. *Spurrier v. Hancock* 4 *Ves.* 667, and other cases there cited. See also *Guest v. Homfray* 5 *Ves.* 818. *Payne v. Miller* 6 *Ves.* 349. *Smith v. Burnham* 2 *Anstr.* 527. *Seton v. Slade* 7 *Ves.* 265. *Vernon v. Stephens* 2 *P. Wms.* 66. *Brazier v. Grattz & al.* 6 *Wheat.* 528. In *Davis v. Hone* 2 *Sch. & Lef.* 347, the Lord Chancellor says, " a court of equity frequently " decrees performance, when the action at law has been lost by " the fault of the very party seeking the specific performance; " if it be, notwithstanding, conscientious that the agreement " should be performed; as in cases where the terms of the agree- " ment have not been strictly performed on the part of the person " seeking specific performance, and to sustain an action at law, " performance must be averred according to the very terms of " the contract." And in *Lennox v. Napper ib.* 684, the Chancel- lor says, that the courts, in all cases of contracts for estates in land, have been in the habit of relieving, where the party, from his own neglect, had suffered a lapse of time ; and from that circumstance, or others, could not maintain an action to recover at law. Courts of equity have, therefore, enforced contracts spe- cifically where no action for damages could be maintained ; and in various cases of such contracts they are in the constant habit of relieving the man who has acted fairly, though negligently. Thus in the case of an estate sold at auction, there is a condition to forfeit a deposit, if the purchase be not completed within a certain time ; yet the court is in the constant habit of relieving against the lapse of time ; and so in cases of mortgage; and in

many instances relief is given against mere lapse of time where that is not essential to the substance of the contract.

With these principles in view, it is now proper to examine the facts so far as they relate to the point under consideration; and see if any sufficient reasons exist which, in a court of equity, will excuse the omission of the plaintiff to pay the debt which was due to the defendant, and both the notes which were due to *Johnson*, at the specified days of payment. In many of the cases above cited, the court compelled a specific performance, on the ground that the conduct of the party; having a right to object, had been such as to amount to a waiver of all objections, and an acquiescence in the conduct of the other party, though it had not been in strict compliance with the terms of the contract. It appears that the deed of the pew was executed on the 19th of *Sept.* 1822, and the defendant's agreement was signed at the same time. The deed of the moiety of the lands was executed on the day before. By the terms of the defendant's agreement, he was not legally bound to reconvey the land, or the pew, or to pay over to the plaintiff any money he might receive on *Ira Getchell's* note, unless the plaintiff should in all respects fulfil his agreement with the defendant. Of course, the conduct of the defendant as to any part of the property conveyed or pledged, will, as to its constructive effect, have relation to the whole.

The first inquiry is whether the plaintiff had for a considerable time delayed a compliance with his engagements. As to the debt payable to the defendant himself, it had been due six months at the time the plaintiff made the deposit in the bank for the defendant's use, and gave him notice of it. By the answer it appears that the plaintiff never paid to *Johnson*, the note due on the 18th of *March*, 1823 ; but that he, the defendant, paid it, after having given the plaintiff notice, and received for reply that he was unable to pay it. It is stated in the bill, however, that the plaintiff on the 18th of *September*, 1823, paid to *Johnson* one of the before mentioned notes, which must have been the one due on that day. It further appears that the sum of $159 was deposited in the *Gardiner* bank on the 18th day of *Sept.* 1823, the very day the defend

ant paid the note to *Johnson,* and that notice thereof was then given to *Jewett* ; and that this sum was sufficient to amount to a. complete indemnity to him for his disbursements at that time, and liabilities on the plaintiff's account.    In *December* following the defendant received in part of the contents of   *Ira  Getchell's* note $22,39, which he has appropriated to his own use; at least, he has not returned  or offered it  to  the plaintiff.  In  addition  to  this, the defendant,  ever  since  the  conveyance of  the pew, has occu= pied it  ;   and it is not alleged  that this continued occupation and use have been under any other  title than the deed of conveyance of the same.    Nor does it appear that the  failure, on the part of the plaintiff, in a strict compliance with his part of the contract, has been injurious in a pecuniary point of  view to the defendant.  The  only fact  in the case, giving countenance to the  idea of an abandonment of  the contract on  the part of  the plaintiff, is his declaration to the defendant that he  was  unable to  make  pay- ments  according to the strict  terms of his contract ;  a circum= stance  far  from being unusual.   It does not  appear  when this declaration was made ;  but it does appear that it  was  followed up by an  important fact, flatly contradicting all idea of abandon=. ment.    We mean the deposit of the money in the bank   And this fact was also followed  by a tender  in the ensuing  *April,* of the same  sum of $159 ;  and also of  the additional sum  $16 89, for the defendant's costs and trouble in the business.   Admitting that the receipt of the $22 39, on *Ira  Getchell's* note  cannot properly be considered a part execution of the  agreement ;  it may  very justly  be deemed an  important  fact, as  shewing  among  other things, a waiver of objections on the part of the defendant.  For it must  be remembered, this  sum  was received by him in  *Decem= ber,* 1823 ;  nine months after a failure in point of punctuality on the  part of the plaintiff ;  and  nearly  three  months after the deposit  was made at  the bank.    It must  also be  remembered, that the incumbrance of  the mortgage  could be no  injury to the defendant, if  the debts had been paid, to secure the  payment of which the land, so mortgaged,  was  conveyed to him.

If by any means the value of a pledge is diminished in the hands of the pawnee, that circumstance is of no kind of importance to

him, if the pledge is redeemed. In the present case, if the defendant had received from the cashier the money deposited at the bank, he would have been indemnified, and the mortgage could never affect him. But he did not receive it, though it was placed at his complete disposal. And the question is now, whether, in a court of equity, this may not be fairly considered as having the same effect as a tender, when taken in connexion with the receipt of the $22,39 on *Getchell's* note in the *December* following; which sum, in case of redemption, or in other words. of indemnity to the defendant, he had no right to retain, but was bound to pay over to the plaintiff; and whether, inasmuch as an indemnity was given him by the deposit, placed under his controul, on the 18th of *September* his receipt of the money on *Ira Getchell's* note in *December* following, and omission to pay it to the plaintiff or offer to pay it, do not amount to a waiver of objections on account of a failure to comply strictly with the terms of the contract on his part ; and to an assent to consider the property conveyed as still redeemable, and the whole concern open to a fair adjustment by the parties themselves, or in a court of equity; especially, when in addition to other circumstances mentioned, we find that the defendant has availed himself of the payment to *Johnson* by the plaintiff of the note due *Sept.* 18, 1823; although he had failed to pay the other note to *Johnson*, due on the 18th of *March* preceding, and left the defendant to pay it himself. This of itself seems a waiver of objection on account of the plaintiff's want of punctuality. If he had not considered himself as waiving it, he should have offered to repay to the plaintiff the sum so paid to *Johnson*, by him. Considering all the circumstances which we have stated, and on which we have commented, we feel it our duty to answer the questions, thus discussed, in the affirmative ; accordingly our opinion is that the defendant's first objection cannot be sustained.

As to the second objection, viz. the want of equity on the part of the plaintiff ; the defendant's counsel, in considering it in his argument, has made two points. 1. That the case does not shew that mutuality of contract, which is essential to maintain a bill for specific performance. 2. That since the failure on the

part of the plaintiff to comply with the terms of his contract, there has taken place such a change of circumstances in relation to the property conveyed, as to render it improper and unjust for a court of equity to compel a specific performance according to the prayer of the bill.

With respect to the question of mutuality, it may be at least doubtful, whether, from the nature of the present case, the principle contended for can be applicable, because its application would be useless. The defendant could never have occasion for a power to compel a specific performance of the contract on the part of the plaintiff, for his contract was only to pay a sum of money ; and the plaintiff could never obtain a reconveyance of the property, without payment of such sum, as a preliminary measure. In this particular, the case before us differs from those cases where the object of the bill is to compel a man to complete a purchase, by receiving a conveyance, and paying the stipulated price for the estate for which he had contracted ; but without relying on this principle and view of the subject, we place our decision as to this point on another ground. The following decisions, some of them in courts of law, and some in chancery, have been relied upon to shew that mutuality of contract in these cases is not necessary ; but that the party who has signed a contract, and who " is sought to be charged by it, is estopped by his name from saying that the contract was not duly signed within the purview of the statute of frauds;" and that it is sufficient, if the agreement is signed by the party to be charged. *Hatton v. Gray* 2 *Ch. Cas.* 164. *Coleman v. Upcot* 5 *Vin. Ab.* 527. *Cotton v. Lee* cited in *Seton v. Slade* 7 *Ves.* 205. *Fowle v. Freeman* 9 *Ves.* 351. *Wain v. Walters* 5 *East*, 10. *Saunderson v. Jackson* 3 *Bos. & Pul.* 238. *Egerton v. Matthews* 6 *East.* 307. *Allen v. Bennett* 3 *Taunt.* 168, 175. By examining the defendant's agreement of the 19th of *Sept.* 1822, in connexion with the averment of identity in the bill, which is not denied in the answer, it is evident that it relates solely to the moiety of the lands conveyed by the plaintiff on the day before ; and has reference to a conditional reconveyance of the same ; the agreement, therefore, is sufficiently explicit in stating the names of

the contracting parties, as well as the terms and consideration of the contract. Opposed to the cases last cited, are those of *Hawkins v. Holmes* 1 P. Wms. 770, and *Lawrenson v. Butler* 1 Sch. & Lefr. 19. But since the decision of the latter case, though Lord *Eldon* for a time hesitated, out of respect to the opinion of Lord *Redesdale*, the courts have resumed their former course of decisions. In *Weston v. Russell* 3 Ves. & Beame 19, the Master of the Rolls did not feel at liberty to adopt the opinion of Lord *Redesdale*; and his successor, in the case of *Ormond v. Anderson* 2 Ball & Beatty 370, was of the same opinion. And in *Clason v. Bailey* 14 Johns. 434, chancellor *Kent* delivered the opinion of the court of errors to the same effect, in which, with his usual ability, he took a broad view of the subject, and presented it in a most luminous manner. From an examination of the foregoing authorities, we are led to the conclusion, that the defendant's second objection, so far as it relates to the want of mutuality of contract, cannot avail him; and we now proceed to that part of it which is founded on the change of circumstances.

In many cases it has been decided that an important change, with respect to the situation of the parties, or of the property which was the subject of the contract, furnishes a substantial objection against decreeing a specific performance, after a considerable lapse of time. Such for instance, as the increased value of the estate ; or where the property agreed to be sold was consumed by fire ; or perhaps, where the owner, supposing the contract abandoned by the purchaser, had conveyed or covenanted to convey it to another person. The defendant in his answer has alleged only one circumstance in relation to the land in question, to shew such a change in the situation of himself and the property, as ought to induce the court to dismiss the bill; which is, that on the 20th of *October*, 1823, he purchased at auction the other moiety of the land and buildings for the sum of $121, which he alleges is more than the just value of it, to be owned in common ; and that this moiety by him so purchased would be rendered of little value to him, if he should be compelled to reconvey the other moiety to the plaintiff. It should be noticed that this purchase was made one month after the deposit

of the $159 at the bank, and the defendant's notice of it; what he did, therefore, was done by him after he was informed of the plaintiff's intention to redeem the moiety conveyed. Besides, he did not hesitate to receive the plaintiff's conveyance of an undivided moiety, as security for $250, and surely there is just as much inconvenience in his holding one undivided moiety, conveyed to him by the plaintiff, as the other, conveyed to him by the administrator of *Ira Getchell.* From these facts we are unable to perceive any essential change of circumstances, or discover how they furnish any substantial objection to a specific performance of his contract. The second objection thus failing, our opinion, is that the defendant's answer is wholly insufficient.

It will be perceived that the court do not mean that time is not of any importance in any equitable point of view, where a claim is made for the specific performance of a contract. Our decision is placed on the peculiar circumstances of the present case, which have been particularly stated and considered in the foregoing opinion.