City vs. Hardie.

## No. 10,706.

### CITY OF NEW ORLEANS VS. JOHN T. HARDIE.

### THE GERMAN PROTESTANT HOME FOR THE AGED AND INFIRM VS. JOHN T. HARDIE.

### (CONSOLIDATED.)

| 43 | 251 |
|----|-----|
| 48 | 1044 |
| 43 | 251 |
| 51 | 546 |
| 43 | 251 |
| 52 | 89 |
| 43 | 251 |
| 110 | 284 |

| 43 | 251 |
|----|-----|
| d123 | 121 |
| 123 | 123 |

In the interpretation of wills the intention of the testator is the polar star by which courts must be guided. It is their duty to realize such intention from *quod voluit* by ascertaining *quod dixit*.

Construction must not be placed upon wills so as to put in the mouth of a testator that which never entered his mind.

A legacy to asylums described as *in being*, is not to be considered as made to asylums *to be* created.

A municipal corporation has no capacity to demand a legacy not made to unrepresented beneficiaries.

A bequest to the support of asylums described is not made to the persons relieved by the institution, although these be the objects of the bounty.

If, at the opening of the succession of the testator, there exists no such asylums as are mentioned in the will, the legacy fails or lapses.

An institution for the aged and infirm created *after* the opening of the succession of the testator, not being *in esse* at that time, has no standing to claim a legacy designed for the support of asylums believed to be in existence at the date of the will, or eventually at the opening of the succession.

A legacy which fails or lapses must be dealt with as a portion of the succession remaining undisposed of. It devolves upon and accrues to the residuary or universal legatee.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Francis B. Lee*, Assistant City Attorney, and *Carleton Hunt*, City Attorney, for Plaintiff and Appellant:

1. The following clause appears in the will of the late Colin J. Nicholson: "To the support of asylums in the faith of the Protestant religion, specially devoted to the care of aged persons, $5000. This, or these, as the case may be, to be located in the city or parish of Orleans, La., and I leave to my executor the selection of such institution or institutions."

2. In the absence of an asylum in the City of New Orleans, of the character described by the testator at the date of his death, the legacy does not lapse and accrue to the residuary legatee, but the City of New Orleans can claim, receive and administer it for the benefit of those persons contemplated by the deceased. Fink vs. Fink, 12 An. 301; Suc. of Eliza Vance, 39 An. 371.

*Jos. H. & I. Zach. Spearing*, for the German Protestant Home, Plaintiff and Appellee:

1. If the legacy is absolute and unconditional, the legatee must exist at the time of opening the succession; if any conditions are attached to the legacy, it is only necessary for the legatee to exist at the time of the fulfilment of the condition. R. C. C. 1474 (1460); Milne vs. Milne, 17 L. 46, *et seq.;* Henderson vs. Rost, 5 An. 460; Suc. of Franklin, 7 An. 415; Fink vs. Fink, 12 An. 319, *et seq.*

*Singleton, Browne & Choate* for Defendant and Appellant:

1. Notice by publication in the manner required by law of the filing of a tableau by an executor, operates as a citation to legatees as well as creditors, and the homologation of the tableau bars all further inquiries as to all matters included in the tableau. C. C. 1064, 1065; 10 R. 118; 11 An. 264; 1 R. 385; 3 An. 664; 27 An. 329; 29 An. 381.
2. When a will is written in plain, unequivocal terms, it must be enforced as written.
   A legacy " to the support of asylums in the faith of the Protestant religion, especially devoted to the care of aged persons, $5000. This, or these, as the case may be, to be located in the city or parish of New Orleans, La., and I leave my executor the selection of such institution or institutions," is a legacy to the asylums described, and not to the aged persons.
   The City of New Orleans has no right to recover such a legacy, on the ground that it is a legacy to the poor of New Orleans, under C. C. 1549. C. C. 1712; 7 L. 230; 7 R. 481; 7 An. 416; 2 Domat by Strahan, p. 374, Sec. 3216, pp. 373, 376, Secs. 3215, 3221; 3 An. 662.
3. To enable a legatee to take by will he must be in existence at the opening of the estate, and have the capacity to receive at that time. 17 An. 54; C. C. 433, 950, 953, 1473, 1482, 1494, 1697; 22 An. 333; 7 An. 415; 4 Wheaton 27.
4. A legacy of the residue of the testator's property is a universal legacy.
   Particular legacies which have lapsed fall into the residuum and go to the universal legatee, and he takes everything that has not been validly given away. C. C. 1704; 35 An. 708; 10 R. 518; 7 An. 51; 10 An. 164; 18 An. 404; 24 An. 375; 30 An. 268; 33 An. 277; 3 An. 707; 12 R. 67; 2 So. Rep. 56.

The opinion of the court was delivered by

BERMUDEZ, C. J.    The question presented in this controversy consists in determining whether a legacy of $5000 accrues to either of the three litigants, to the exclusion of the others.

The appeal is taken by the city and by the defendant from a judgment awarding it to the German Protestant Home.

It appears that on May 31, 1873, Colin J. Nicholson made his olographic last will, which contains among others, a bequest: " To the support of asylums, in the faith of the Protestant religion, especially devoted to care of aged persons, five thousand ($5000) dollars.

This, or these, as the case may be, to be located in the city and parish of Orleans, and I leave to my executor the selection of such institution or institutions.

"The residue I leave to John T. Hardie, and I appoint him my executor, without security," etc.

Nicholson having departed this life in the early part of 1879, his succession was duly opened, Hardie qualifying as executor.

In the course of time, September, 1882, a final account was filed, in which, after stating the active and passive and striking a balance of $26,361.49, which included the legacy of $5000, the executor said that he had not paid the legacy for the reason that there are no asylums of the kind indicated in the city and parish of Orleans.

It belongs to the judicial history of this legacy that it was once claimed by the St. Anna's Asylum; but not allowed, as the claimant was not an asylum *especially* devoted to the care of aged persons, but to the relief of destitute females and helpless children. 37 An. 346.

In the present controversy the City of New Orleans, charging that there was no asylum within the limits designated, of the character described by the testator; but that there were and are persons in existence within the same, who entered in the testator's contemplation at the making of his will, and who are unrepresented, for whose benefit it can claim, receive and administer the legacy which has not lapsed, prays that it be decreed entitled to the same.

On the other hand the "German Protestant Home," which is established in the parish of Orleans, claiming to be an asylum for the aged and infirm, asserts title to the legacy, in preference to the City of New Orleans.

Finally, the defendant pleads *res judicata*, resulting from the homologation, without opposition, of the final account designating the residue of the estate, and denies any right, on the part of the city or of the German Protestant Home, averring that the legacy having failed or lapsed, there being no legatee *in esse* at the opening of the succession, it has accrued to him as universal legatee.

In order to arrive at a correct conclusion in this matter, it is of all importance to ascertain what the intention of the testator was when he drew up his last behests.

It has been well said that, in interpreting or construing a will, the intention of the testator is the polar star by which the court is to be

guided, and that it is the duty of those who have to expound a will to ascertain the *quod voluit* by realizing the *quod dixit*.

A thoughtful reading of the testament in this case impresses the mind irresistibly that the testator *first* determined to relieve aged persons in the faith of the Protestant religion; that he next considered that it would not be practical to make a bequest to such persons; but that his purpose could only be subserved properly by conferring the benefit on asylums in that faith which would have, as a *special* object, the care of such persons.

He further thought that it would not do to make the legacy to all such asylums in the world; but that some good could be accomplished if it accrued to those of a particular locality, which he conceived should be the place of his residence, the City of New Orleans and parish of Orleans, intimating further that the legacy need not accrue to *all* such asylums within those limits, but that it might accrue to *one* asylum only, the choice or selection of such institution to be left to his executor.

Finally he concluded that the amount of the liberality should be fixed at five thousand ($5000) dollars.

So that the disposition contained in the will can be said to mean so as to read as follows:

To asylums in the faith of the Protestant religion, especially devoted to the care of aged persons, to support themselves, $5000, the asylum or asylums to whom this legacy shall accrue being located in the city and parish of Orleans, and to be selected by the executor.

The City of New Orleans, in a laudable spirit, conceiving that the legacy was designed for the relief of unrepresented aged persons in the faith of the Protestant religion, and not to any asylum; and further that at the opening of the succession there was no asylum in that faith especially devoted to the care of aged persons, assumed that the legacy had not lapsed, and that it had the right to claim, receive and administer it for the benefit of the persons contemplated by the deceased.

In support of that pretension the city relies almost exclusively on the ruling in the Fink case, 12 An. 301, to which reference was made approvingly in the Vance case, 39 An. 371.

In order to illustrate the kindred relations between these cases and the instant one, the zealous and acute assistant counsel of the city dissects the two testamentary dispositions in the Fink case, and

in the one under consideration, reducing that in the previous one to the following:

"That the whole of my estate shall go to the maintenance and support of an asylum in this city devoted solely to the care of Protestant widows and orphans;" and that in the present case as follows: "That $5000 shall be applied to the support of a Protestant asylum in the City of New Orleans devoted to the care of aged persons."

The paraphrase in the Fink case is incorrect and unfortunate.

The testator there did not leave his estate to an asylum in the City of New Orleans, but directed that, after payment of his debts and of the legacies, the proceeds of his estate be applied to the *erection*, maintenance and support of a suitable asylum in the city, to be used solely as an asylum for Protestant widows and orphans, to be called *Fink's Asylum*.

He also directed that his executor should nominate trustees, in whom should vest the superintendence of the erection of the asylum and the administration of the charity, without any further authority than that derived from the will.

In an exhaustive opinion the court reached the conclusion that the legacy had been made, *not* to the prospective asylum, but to the widows and orphans, the beneficiaries, for whom an asylum, that is suitable buildings, would be erected. It pronounced the delegation of power to the executor to nominate trustees a nullity, under Act 1566 (R. C. C. 1573), and treated it as unwritten, under another provision of the Code. Art. 1506 (R. C. C. 1519).

Hence, under the circumstances, the widows and orphans being the beneficiaries, and there being no one *in esse* to whom the proceeds could be paid, the court held that the city had the right to claim, receive and administer the bounty, in furtherance of the charitable ends of the testator. C. C. 1536; R. C. C. 1549.

The two cases are dissimilar.

In the instant one the testator did not make the legacy to the "aged persons" mentioned in the will, although surely they were to be benefited by it. He made the legacy to an asylum or to asylums in the Protestant faith, which he supposed to be in existence at the date of his will, or would exist at the time of his death, to support said asylum or asylums, especially devoted to the care of aged persons, the same located in the city and parish of Orleans.

We therefore conclude, on this branch of the case, that the city has no standing to claim the legacy.

\* \* \* \* \* \* \* \*

The pretensions of the " German Protestant Home for the aged and infirm " to the legacy do not appear to have a solid foundation upon which to rest.

It is conceded that, if the legacy was absolute and unconditional, the legatee must exist at the time of the opening of the succession, R. C. C. 1473; but it is pressed that, as it is not such, because conditions are attached to it, it is only necessary that the legatee exist at the time of the fulfilment of the condition. R. C. C. 1474.

A fresh reading and renewed consideration of the testamentary disposition in question does not reveal the important circumstance invoked, that conditions have been attached to it within the intent and meaning of the last article.

On the contrary, it is in itself an absolute and unconditional disposition of $5000 to an asylum or to asylums in the faith of the Protestant religion, located in the city and parish of Orleans, and *especially* devoted to the care of aged persons.

The conditions, if any, attached to the legacy, do not form part of the class of those within the purview of Article 1474; but are simply such as *describe* the asylum which is to be the beneficiary of the testator's generosity. Strictly they are no conditions *at all.*

The foundation *sine qua non,* upon which the testamentary disposition rests, and without which it can not receive execution, is that the legatee must exist at the opening of the succession, in the absence of any declaration to the contrary, which is totally wanting in the present instance.

It is claimed by the "*Home*" that the condition attached to the legacy is that the executor shall select the asylum or asylums to be benefited.

This is not a condition within the purport of the article.

The testator never meant that the legacy would accrue *only if* the asylum was selected by the executor. He described the asylum and required its selection.

The legacy was absolute and unconditional to the asylum, or asylums, to be thus selected; but the executor, conceding that the delegation of the power of selection was legal, has declared and the fact is, that there did not exist at the opening of the succession any

City vs. Hardie

asylum whatever answering the description of that or those men-tioned in the will.

The "Home" was created in 1885. The succession was opened in 1879. It was not therefore *then* in existence.

There is a further contention that the asylum or asylums which the testator intended to benefit was or were not required by him to be in existence at the date of the opening of his succession; that his liberality was to accrue to an asylum "*to be located*" in the city and parish of Orleans, in the very words of the will, which refer to the *future* and not *to the present*.

We do not consider the will thus to mean. We are of opinion, as already said, that the testator, when he undertook to pen his last intentions, believed, or took it for granted, that there must have existed then some asylum of the kind which he had in his mind, *or that* there would exist such at his death. Had he designed other-wise, he would have said so, as did Fink, and he has not done so.

Independent of all these considerations, it is apparent that the "*Home*" is not entitled to receive the legacy, for the obvious and palpable reason that it is made to an asylum "*especially* devoted to the care of aged persons," and that, although it may have been proved that the "Home" cares for some of such persons, there is nothing to show that it is "*especially devoted to the care* of such per-sons."

We are not to be understood, however, to mean that, had this been shown, the "Home" would have been entitled to the legacy.

A will should not be so constructed as to place in the testator's mouth that which never entered his mind.

The adverse determination of the merits of the applications of the City and Home for payment of the legacy to either of them dis-penses the court from passing upon the plea of *res judicata*, set up by the defendant, mentioned in the early part of this opinion.

It now only remains for the court to say that, as the legacy has failed or lapsed, it must be considered as a portion of the succession remaining undisposed of, and devolves upon and goes to the benefit of the defendant, or residuary or universal legatee. R. C. C. 1704, 1709; Suc. of Burnside, 35 An. 708, *et seq.*; Prevost vs. Martel, 10 R. 512; Suc. of Foucher, 18 An. 409; Hoover vs. York, 24 An. 375; Suc. of Dougart, 30 An. 268; Suc. of Dupuy, 33 An. 277; Sterpes Lescot, No. 1314.

17

It is therefore ordered and decreed, that the judgment appealed from be reversed, and it is now adjudged that the demands of the plaintiffs be rejected with judgment in favor of the defendant, with costs in both courts.