ESTINA KAROLUSSON et al., Appellees, v. E. J. PAONESSA, Appellant, et al.

DECEMBER 14, 1928.

*Welty & Soper* and *Lee, Steinberg & Walsh*, for appellant.

*Helsell, Helsell & McCall*, for plaintiffs, appellees.

*F. E. Hanson*, for T. T. Henryson, guardian, appellee.

*Addison & Smedal*, for other appellees.

*H. E. Hadley* and *J. R. Larson*, for Henry Duvick, intervener.

FAVILLE, J.—Christian Karolusson and his wife, Anna, were natives of Norway, and emigrated to this country and located on a farm in Hamilton County more than fifty years ago. They were the parents of one child, a daughter. The daughter married a man named Duvick, and to this marriage one child was born, whose name was Anna M. C. Duvick. The Duvicks were afterwards divorced, and the custody of the minor daughter was awarded to the mother. Subsequently, this child was adopted by its grandparents, Mr. and Mrs. Karolusson, and was thereafter known as Anna M. C. (Duvick) Karolusson. The daughter so adopted grew to womanhood, married one Zenor, from whom she was afterwards divorced, and subsequently married the appellant, Paonessa. She died January 16, 1919, without leaving any issue surviving her, but survived by her adoptive mother, Mrs. Karolusson. In 1906, Christian executed his last will and testament, the important parts of which are as follows:

"Second. I give, devise, and bequeath to my beloved wife, Anna M. Karolusson, the use, rents, income and control of all my property, of every kind and nature, of which I may die seized, or be in any manner entitled to, she to have the income and control of the same during the period of her natural life, and if necessary for her comfortable care and support, she may use so much of the principal or property, over and above the said income, as shall be necessary for that purpose, and it is my wish and request that she contribute from the said income and property such amount as she deem wise and best for the education, care and support of our adopted daughter, Anna M. C. Karolusson. I leave it entirely to her good judgment to do whatever she thinks best in contributing to the support of our said adopted daughter, Anna M. C. Karolusson.

"Third. Subject to the interest and the estate given herein to my wife, in my property, I give, devise and bequeath to Hon. George Christianson, of Randall, Iowa, in trust, however, for the purposes hereinafter named all of my property of every kind and nature, left after the death of my said wife, to be by him safely invested for the best interests of my estate, and from the net income therefrom, to use so much thereof as he shall in

his best judgment deem for the best interests of my said adopted daughter, for her education, support, and benefit. And if my said adopted daughter shall get married and settle down and conduct herself in such a way as in the judgment of my said trustee she will take care of, and make good use of the said property, the same shall be transferred to her, or for her use and benefit as in his sound judgment shall be to her best interest, it being my will and desire that she shall have the use and benefit of my property and estate, in a manner that will be for her best interests and support.

"Fourth. In the event that my said adopted daughter dies before the death of my wife, leaving children, then the said property shall be used by my said trustee for the education, care, and benefit of such children as provided for in Paragraph 3 hereof for my said adopted daughter, until such time as such child or children shall arrive at lawful age, when the said property shall be transferred to said child or children of my said adopted daughter.

"Fifth. In the event that my said adopted daughter dies before the death of my said wife, leaving surviving her no child or children, then, and in that event, and subject to my wife's interest in my estate as hereinbefore stated, I hereby give, devise, and bequeath my property, both real and personal, to the Norske Evangelical Lutheran Church of Hauges Synod of America, the China Mission of the Hauges Synod of America, and the Boeresens and Skrefsruts Santhal Mission, Santalestan, India, to each an equal and undivided one third, share and share alike."

Christian died October 2, 1909. His widow survived him. In 1918, the surviving widow and the adopted daughter and her husband, the appellant, Paonessa, brought an action for the construction of the will of the said Christian. In said proceeding, the widow elected of record to accept the terms and provisions of the last will of said Christian. Said case was prosecuted to this court. *Karolussen v. Christianson*, 187 Iowa 744. In that case we held that, Anna having died pending the appeal, the trustee had no further interest in the estate, and that the trust was terminated; and the appeal by the trustee was dismissed. The plaintiffs in the instant case were not parties to said action. The surviving widow of Christian executed her

will, under the terms of which she devised and bequeathed all of her property to the appellant, Paonessa. It also appears that, on July 24, 1918, the said widow executed a deed purporting to convey the land in question to Anna Paonessa. The plaintiffs in this action are heirs at law of Christian. The mother of Anna predeceased Christian. It also appears that, in another action brought by the widow and adopted daughter of the testator, to which these plaintiffs were not parties, it was adjudged that the devise to the Norwegian Charities, so-called, in excess of one fourth of the estate, was void, under the statute. The said charities are made parties to this action, and relinquish any claim to any portion of said estate in excess of one fourth thereof. This appeal, therefore, involves only three fourths of the estate of the testator.

The contentions of the respective parties may be briefly stated as follows: The appellees (plaintiffs) contend that, upon the death of the adopted daughter, Anna Paonessa, the three-fourths remainder in the estate of Christian reverted to the estate of the said testator, and should be distributed to his heirs as of the date of the death of the said Anna, they taking by right of representation, and not as heirs.

The appellant, Paonessa, claims the property in question, upon the theory that the title to the property was fully vested in his wife, Anna, at the date of her death, by virtue of the deed executed by her adoptive mother, the widow of Christian, under the power given to her by the terms of the will; and it is the further contention of the appellant that, under the terms of the will of Christian, the adopted daughter, Anna, became the absolute owner of said three fourths of said estate, subject only to the widow's life estate, and that, upon the death of the adopted daughter, Anna, her adoptive mother and her surviving husband, this appellant, became entitled to the whole of said three fourths of said estate, and that, the mother, Mrs. Karolusson, having later died testate, and by the terms of her will having left the whole of her estate to the appellant, Paonessa, he thereupon became vested with the entire title thereto. Appellant also contends that, if it be held that the testator died intestate as to said property, the widow having elected to take under the will, the property would pass to Anna, as the sole heir of the testator at the time of his death, and the property would pass

to appellant, as the spouse of Anna, and to her mother, as her sole heir, and that appellant, being sole beneficiary under the will of Anna's mother, would take the entire estate.

I. Section 11848, Code of 1924, is as follows:

"No devise or bequest to a corporation organized under the chapter relating to corporations not for profit or to a foreign corporation of a similar character, or to a trustee for the use or benefit of any such corporation, shall be valid in excess of one fourth of the testator's estate after the payment of debts, if a spouse, child, child of deceased child, or parent survive the testator."

Appellant contends that the plaintiffs-appellees are not among those designated in this statute, and hence cannot question the validity of the bequest to the Norwegian charities in this action. Under the statute, if the testator had not been survived by a spouse, child, child of a deceased child, or a parent, the bequest to the Norwegian charities would have been perfectly valid. The purpose of the statute was obviously to prevent a testator from disposing of more than one fourth of his estate for charitable purposes where he was survived by any of the persons designated. It was, in a sense, a legislative recognition of the adage, "Charity begins at home." Upon two occasions at least, we have intimated that the statute would seem to imply that no person other than the spouse, child, child of a deceased child, or parent of a testator, may maintain an action under this provision of the statute. *In re Estate of Noble*, 194 Iowa 733; *Randleman v. Williams*, 196 Iowa 538. We think such was clearly the legislative intent, and we now make definite pronouncement that a bequest to a charity in excess of one fourth of a testator's estate can only be called in question by one of the parties named in the statute, or a legal representative, such as a guardian of such named party. It was not intended by the legislature that the mere fact of the existence of a surviving spouse or child or other party named in the statute should *ipso facto* give some other party, as, for example, a surviving brother or nephew, a right to challenge the bequest to charity.

Subject to certain statutory limitations, especially as to a surviving spouse, a testator may dispose of his estate in this

jurisdiction in any manner he may see fit. By the statute in question, the legislature clearly intended to place an additional limitation upon the power of a testator to dispose of his estate. If such designated parties do not challenge the bequest to charity, it does not lie in the mouth of any other person to challenge it. It may often happen that a testator will make a bequest to charity in excess of one fourth of his estate, and leave a surviving spouse, and the spouse will fully acquiesce in such charitable bequest, and wish that the will be carried out in its entirety. Could it be said that, under the statute, the mere fact of the existence of a surviving spouse would enable some other person, such as a distant collateral heir, to challenge the bequest to charity? We think not.

In the instant case, it does appear that a challenge to the charitable bequest was successfully made by the surviving spouse and adopted daughter of the testator. The bequest was held invalid as to three fourths of the testator's property, in a proper action, brought by a proper party. This being true, it certainly becomes a matter of proper litigation between any persons claiming an interest in said property to ascertain the legal disposition that shall be made of the property that did not pass under said bequest to charity. Such is the case before us. The Norwegian charities are made parties to this action, and disclaim any interest in the property involved. To whom, then, shall it go? This is a proper matter for judicial determination between any parties who may claim an interest in said property which has been held, in a proper proceeding, brought by a proper party, under the statute, not to pass to the Norwegian charities. We therefore hold that the plaintiffs could maintain this action, under their claim of an interest in this property.

II. Coming now to the merits of this controversy as to the proper disposition of the three fourths of the estate, we first consider the deed from the widow of the testator to the adopted daughter, Anna. It is contended that, under the terms of Paragraph 2 of the will, the widow of the testator had power to alienate the property in question by deed, and that the deed from her to Anna carried the fee title. The will provides, as to the widow, as follows:

"If necessary for her comfortable care and support, she may use so much of the principal or property over and above the said income as shall be necessary for that purpose."

The deed to Anna does not purport to have been executed under this provision of the will. It was not made as being necessary for the "comfortable care and support" of the widow. The recitals in the deed negative such purpose, and the record fails to show that such conveyance was in keeping with this clause of the will, or was made in pursuance thereof.

But the will also provides:

"It is my wish and request that she [the widow] contribute from the said income and property such amount as she deem wise and best for the education, care and support of our adopted daughter, Anna M. C. Karolusson. I leave it entirely to her good judgment to do whatever she thinks best in contributing to the support of our said adopted daughter, Anna M. C. Karolusson."

The deed to Anna recites:

"This conveyance is made under and by virtue of the power granted to me by the will of Christian L. Karolusson, now deceased. It is my judgment that the said Anna M. C. Paonessa has married a deserving husband; that she is devoted to him, and that the best way to contribute to her education, permanent care and support is to vest her with the title to said premises."

It is contended that the widow had the power of disposal for the benefit of the adopted daughter, Anna, and that the conveyance to Anna was for the express purpose designated in the will: to wit, the care, support, and education of Anna.

A majority of the court are of the opinion that the power to dispose conferred by the terms of the will upon the widow that might be exercised in favor of the adopted daughter was broad enough to support the deed in question. The will expresses a wish and request that the widow make contribution for the education, care, and support of the adopted daughter "from the said income and property." It then expressly provides:

"I leave it *entirely* to her good judgment to do *whatever*

134

*she thinks best* in contributing to the support of our said adopted daughter." (The italics are ours.)

The widow was given a life estate in the property, with this power of disposal for the benefit of the adopted daughter. By the third division of the will, the trustee was empowered to make disposal of the entire estate to the adopted daughter, upon certain conditions. The evident purpose and intent of the testator was that the property should all go to the adopted daughter, if, in the good judgment, first of the wife, and later of the trustee, the conditions warranted such transfer. The terms are broad and comprehensive. The power of disposal conferred upon the widow was in the nature of a trusteeship. Large discretion was vested in the widow, under the power granted. The testator left it *entirely* to the widow to *do whatever* she thought best in contributing to the support of the adopted daughter. There was no limitation as to when the support was to be given, whether during minority, or before marriage, or otherwise. It was left *entirely* to the judgment of the widow to do *whatever* she saw fit in this regard. The widow thought proper to deed the property to the adopted daughter, reciting in the deed that it was in pursuance of the power granted in the will, and in fulfillment of her judgment that it was the best way to contribute to the support of the adopted daughter.

The majority hold at this point that the conveyance to the adopted daughter by the widow was valid, and that the adopted daughter acquired fee title to the premises thereunder.

The minority of the court, of whom the writer of this opinion is one, are of the view that the recital in this paragraph of the will, as to the care, support, and education of Anna, is merely precatory; that it is the expression of the "wish and request" of the testator, but is in no proper sense a bequest or a provision under which Anna could have claimed anything from the widow or the estate; and that the deed made in 1918, after the marriage of Anna to the appellant, and under conditions then existing, was not such a contribution "to the education, care, and support" of Anna under the "wish and request" of the testator, as expressed in the will, as could render it a valid conveyance. In the view of the minority, the will did not create a power of disposal in the widow under which she could vest the entire estate in the adopted daughter, but the provision was

merely a *request* from the testator to the widow to contribute
"from the income and property" given to the *widow* such sum,
if any, as the widow might see fit, for the care, education, and
support of the adopted daughter. In order that it might not be
claimed that this "wish and request" of the testator's should
give the adopted daughter any *right* to any share in the widow's
property, the testator expressly provided that he left it entirely
to the good judgment of the widow as to whether or not *she*
should contribute anything to the adopted daughter out of the
income or property given to *her*.

The minority think there was no intention to create a power
by which the widow could convey the entire estate to the adopted
daughter. In their view, it was a mere *request* to the widow to
use part of *her* income and property, if she saw fit, for the care,
education, and support of the adopted daughter, but the testator
wanted it expressly understood that he left it entirely to the
widow to determine whether or not she should give the adopted
daughter anything out of the income and property given to her
under the will.

It is the conclusion of the majority that, under the deed
from the widow, the title to the premises passed to the adopted
daughter, Anna. This conclusion would, in any event, work a
reversal of the case.

While the court are divided as to the foregoing question,
we are in agreement as to another view of the case, which we
now consider.

III. The purpose and intention of the testator was un-
doubtedly to dispose of all of his property by his will. For this
purpose, he provided that, unless disposed of in accordance with

the terms and provisions of the trust, it should
then pass to the Norwegian Charities. The de-
vise to the charities failed as to three fourths
thereof, because of the statute. There is no
residuary clause, and no provision for any reversion. In a
quite proper sense, it may be said that the devise lapsed as to
three fourths, because there was no taker competent to take.
A devise or bequest of a remainder lapses where there is no one
in existence, at the time for distribution, who can take under
the will. *Baker v. Hibbs*, 167 Iowa 174.

The general rule is that the failure of a specific legacy to

vest or become effective leaves the amount so released to fall into the residuum. *In re Estate of Freeman,* 146 Iowa 38; *Beidler v. Dehner,* 178 Iowa 1338; *In re Estate of Walden,* 190 Iowa 567; *Carpenter for an Opinion,* 47 R. I. 461 (134 Atl. 16); *Edwards v. Beard,* 77 Ind. App. 478 (134 N. E. 203); *Woodward v. Congdon,* 34 R. I. 316 (83 Atl. 433); *Stetson v. Eastman,* 84 Me. 366 (24 Atl. 868); *Wood's Estate,* 209 Pa. St. 16 (57 Atl. 1103); *Dresel v. King,* 198 Mass. 546 (85 N. E. 77); *Givens v. Ott,* 222 Mo. 395 (121 S. W. 23); *Smith v. Smith,* 141 N. Y. 29 (35 N. E. 1075); *City of New Orleans v. Hardie,* 43 La. Ann. 251 (9 So. 12).

So here, if there were a residuary clause in the will, the devise of the three fourths failing to vest or become effective, it would fall into the residuum. But there is no residuary clause in the will. In such a situation, the testator has failed in his attempt to dispose of his property to some other person than his heirs. The result must be that the testator's heirs take the property. *Lepage v. McNamara,* 5 Iowa (Clarke) 124. Where a will contains no residuary clause, a void or lapsed legacy or devise will go to the heirs or next of kin of the testator, as in cases of intestacy. *In re Estate of Freeman,* supra; *Filkins v. Severn,* 127 Iowa 738, 740; *Moran v. Moran,* 104 Iowa 216; 40 Cyc. 1941, Paragraph I, and cases cited.

In the instant case, the devise as to three fourths of the testator's estate lapsed, for want of a competent devisee who could take it. There was no residuum into which it could fall. There was no provision for a reverter. It therefore must go to the testator's heirs, as being property undisposed of by the will.

In the view that we take of the case, it is unnecessary that we pass upon all of the contentions of the respective parties. Under the terms of this will, in view of the conceded facts, the case presents a simple situation of intestacy as to three fourths of the estate of the decedent. There never was any legal provision in the will for the final disposition of this portion of the estate. It never vested in any legatee. An attempt was made by the testator to dispose of it, and this attempt was futile and abortive. No provision was made for the disposition of this portion under any residuary clause or by any reverter. It simply fell as intestate property, and did not pass to any person under any terms or provisions of the will. It therefore descended to the heirs of the testator, as intestate property.

In its final analysis, the case presents the situation of a lapsed devise, with no one competent to take. There being no residuum provided for, and no reverter, the property passed as intestate property; and under such conditions, it is the general rule that the heirs or next of kin take the intestate property, according to the law in force at the time of the death of the testator. *Filkins v. Severn*, supra; *Holcomb v. Lake*, 25 N. J. Law (Dutch.) 605; *Clark v. Cammann*, 160 N. Y. 315 (54 N. E. 709); *Greenland v. Waddell*, 116 N. Y. 234, 245 (22 N. E. 367); *Rosenau v. Childress*, 111 Ala. 214 (20 So. 95); *Hooper v. Hooper*, 9 Cush. (Mass.) 122.

This being true, it follows that the property passed by the line of descent, and would vest in the widow of Christian and in Anna. The widow elected to take under the will. Anna was the sole heir. She died intestate. Appellant is her surviving spouse. The share that would go to Anna's adoptive mother (Christian's widow) passed to appellant, under the will of said widow. He takes the remainder as surviving spouse, and hence the full title vests in him.

It follows that the decree of the trial court was erroneous in awarding the property to appellees, and it must be—*Reversed.*

All the justices concur in the result.