Hillsborough,⎫ No. 3317.
April 7, 1942.⎭

THE SOUHEGAN NATIONAL BANK, *Trustee v.* FRANK R. KENISON, *Attorney-General & a.*

·*McLane, Davis & Carleton* and *Benjamin F. Prescott* (*Mr. Carleton* orally), as *amici curiae.*

*Frank R. Kenison,* Attorney-General, and *Ernest R. D'Amours,* Assistant Attorney-General (*Mr. Kenison* orally), for the public.

*Dudley W. Orr,* guardian *ad litem,* for the testator's heirs at law.

ALLEN, C. J.    Somewhat interdependent, two issues of construction of the final residuary clause are presented.    One is the meaning of the word "suggestive" in description of the memorandum stated to have been prepared and made a part of the will.    The other arises from the fact that contrary to the assertion of the clause, no memorandum in fact had been prepared.

The word "suggestive" in characterizing the memorandum falls far short of any implication of requirement and does not signify even an advisory treatment to be given the memorandum.    It prescribes no range of selection limited to the memorandum, and hardly does it import recommendation.    Fairly, so far as the memorandum was to be a proposal, the trustee was at full liberty to reject it in part or in whole.    Less than an expression of wishes, at most it manifests a purpose to submit institutions and causes for consideration.    If more effect had been intended to be given it, a word more significant of command or request to heed and favor the memorandum would have been used.    The word is to be given its ordinary and natural meaning appropriate to the will as a serious document providing for the disposal of property and to the special context of the clause in which it is found.    A meaning of the word applicable to other situations and subjects of attention is no reason for ascribing ambiguity to it in its use under consideration.    The clause conveys no thought of a special meaning given the word, and the rule is applicable, that words are to be taken in their ordinary and usual meaning when the context does not show conflict or protest.    Resort to extrinsic evidence is not invoked since no difficulty of application arises.

In considering the testator's failure to prepare the memorandum and make it a part of the will, if one had been prepared prior to the execution of the will, it would have become a part of the will as an incorporation by reference.    It is contended for the heirs that the final residuary clause is, therefore, incomplete with the result of its invalidity.    Stated otherwise, it is argued that the clause depended upon the existence of the memorandum as a condition for its maintenance.

The inaccuracy of statement is readily explained.    When the draftsman of the will composed it, he expected that the memorandum would be prepared and in readiness by the time the will was executed, relying on the interviews he had had with the testator.    But the testator at that time had not decided upon his suggestions and stated that he would furnish them later.    It was apparently thought that a memorandum to be supplied would answer the purpose, in a

mistaken view of the law barring it as a part of the will unless executed as a testamentary instrument. Through carelessness the will was not corrected by describing the memorandum as one to be prepared.

The meaning of the will on this point is clear and plain. Anyone reading it would say that it referred only to a memorandum already prepared, and a meaning of reference to one to be prepared cannot fairly be ascribed to the language used. The past and present tenses in the phrase "which I have prepared and hereby make a part of this my last will" have significance only of what has been and is being done, and are not susceptible of a meaning of future action. The mistake was not grammatical, but was of statement in direct contradiction of a fact known to the testator. To read the will in order to have it conform with the fact of postponement of the memorandum would be to correct it, as a matter of reformation not permitted.

But the existence of a memorandum is not an essential to the upholding of the final residuary clause. "A testator is to be considered as intending a benefit to the object of his gift," and the presumption against partial intestacy is strong. Hening's Dig., 1633, and cases cited. As already appears, the memorandum was to be a minor detail with no obligatory force in affecting the discretionary duties of the trustee. Discretion was granted regardless of the memorandum. Clearly, as the final residuary clause reads, the testator expressed no thought or purpose that its objects of benevolence should fail in the absence of the memorandum. Having his mind made up how to dispose of the ultimate residue, he carried his purpose into effect. Not having his mind made up for suggestions short of directions for the disposal, he did not thereby defeat his purpose, by saying contrary to fact that his suggestions had been made and as a part of the will. He executed the will knowing no memorandum existed, and his misstatement of a fact within his knowledge has no bearing to give a conditional quality to it.

The will is a completed document. Its terms are clear and by them nothing remains to be done to make it effective. The intention of full effectiveness is patent, and the proof by extrinsic evidence of the misstatement creates no ambiguity. The stated reference is not a real one since it has no possible application and the issue of construction is whether or not the reference has effect to nullify the bequest to which it relates. Considering the character of the proposed memorandum, it is clear that it does not. It is almost an elementary proposition to say that testacy, as a matter of serious

importance, is not shown by the will to be subject to defeat because of non-compliance with a term of minor consequence having no more than optional force in guiding the trustee's discretion. Consideration of possibilities suggested by the testator was not a required factor in the action of the trustee. The term, being impossible of fulfilment, is analogous to a lapse. But the lapse is only of the term, in view of the manifest purpose disclosed by the will and not made ambiguous by the extrinsic evidence.

It is not necessary to invoke the law's favor for charities in thus construing the clause.

The final residuary clause creates a valid charitable trust. It is not void for indefiniteness (*Haynes* v. *Carr*, 70 N. H. 463; *Clark* v. *Cummings*, 83 N. H. 27; Scott, Trusts, *ss.* 395, 396) nor because "the benefit intended is one in which all mankind may share" (*Glover* v. *Baker*, 76 N. H. 393, 417).

In the exercise of discretion in the execution of the clause, the trustee is to distribute the trust fund in allotment among religious, relief and other public charities "in any part of the world," and the distribution of principal as well as interest is to be made as the will provides within "a longer or shorter period of time."

Its discretion must be within the limits of reasonableness. What may and may not be reasonable cannot be stated with any preciseness of definement. Broadly, what persons in general might consider fair and proper in disposal of the fund, under the terms of the will, is the test. In allotment, exact proportion among the different forms of charity is not required, but it is considered a demand of the will that principal preference should be given to religious and relief causes, since they are specifically mentioned in the clause, with subordinate and minor distribution among other charities. The reference in the will to time of distribution appears to call for a full distribution of the fund within a period not long protracted; and with account taken of known present needs as prospectively greater or less than needs of the near future. Priority given to local or national needs is not an expressed demand of the will, but the trustee might within reason consider it as of paramount weight in the selection of causes; while charitable aid "in any part of the world" is to be extended, nearby needs might be thought more exigent than distant ones. But no part of the fund is to be allotted to any of the special charitable legatees of the will, since the testator evidently made all the provision for them which he desired. Clearly, religious charity is limited to Christianity, and charity injurious to local or

national interests and welfare would be outside the contemplation of the will as well as forbidden by public policy.

A somewhat obscure situation exists in the relation of the State's Attorney-General to charitable trusts. The duty of his office to enforce them admits of no question. The beneficiaries of such trusts are the public or a part of the public, and an individual as a member of the public has rights only as a relator to the Attorney-General. But the office is unorganized and unequipped to enforce such trusts in a comprehensive scheme under supervisory arrangement. The result is that the office acts only in sporadic instances when complaint is made or instructions sought, with the further result that the trustee's errors of commission are more difficult to remedy by redress than are errors of omission by correction. When the trust fund or property is not given to an institution as trustee for its own benefit, but the trustee has discretionary powers in administering the trust, as here, the occasion for supervision as an implement of enforcement seems especially demanded. But to announce a rule prescribing such a duty would be impractical in view of the undue burden it would impose. The most that can be said is that the Attorney-General's office should exercise supervisory authority as incidental to enforcement when it is thought that there is proper occasion to do so, thus placing on the trustee some corresponding duty to inform and account, so that either party may apply to the Superior Court in the event of conflicting claims whether or not the trustee has acted or proposes to act within the legitimate sphere of his authority. As to action already taken by a trustee appointed by a probate court under a will, the remedy for redress is to be sought there in the first instance as the seat of original jurisdiction. See Rev. Laws, c. 363, ss. 1, 14.

The interest of the public in charities outside the state has been questioned. *Carter* v. *Whitcomb*, 74 N. H. 482, 489, 490. But the decision there was expressly confined to "the purposes of the case," and applied only to the taxation of legacies to such charities. The public interest is minor compared with that in local charities, but it is sufficient for the enforcement of the charity by the Attorney-General. Only he may act when the trustee has the power and authority to specify the charity and without his right to act the trustee would be answerable to no one. The trust fund while in the trustee's hands is property under the State's jurisdiction, and the trustee's obligation is one of law. Good faith demands that the trustor's benevolence should not fail and that the State's protection

should be given for it.    It would be contrary to the spirit of the law and a reflection upon public integrity, if there were no remedy. Especially here, where the charity may be for local as well as outside purposes, the duty of enforcement is unrestricted by the State's boundary lines in marking its local or outside status.

The petitioner seeks instructions generally with no specific requests.    It is understood from the briefs and arguments of counsel that this opinion sufficiently defines its duties as to which it desires exposition.

*Case discharged.*

All concurred.