[L. A. No. 20748. In Bank. May 27, 1949.]

Estate of SALLIE H. BUNN, Deceased. MARGARET BUN-NELL et al., Petitioners and Respondents; FRED WOODWORTH et al., Legatees and Respondents, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Appellant.

 

McLaughlin, McGinley & Hanson and James A. McLaughlin for Appellant.

Heller, Ehrman, White & McAuliffe, Lloyd W. Dinkelspiel and Lawrence C. Baker as Amici Curiae on behalf of Appellant.

Laurence Phillips for Petitioners and Respondents.

William N. Parker and Fleming & Boyce-Smith for Legatees and Respondents.

EDMONDS, J.—The testamentary provisions made by Sallie H. Bunn specified that the residual estate should be ''sold and given to a worthy charity selected by my executors.'' In a proceeding to establish heirship, it was determined that no valid charitable trust was thereby created and distribution of the property was ordered according to the rights of succession. The appeal by the executor presents for decision only the question as to the validity of the disposition to charity.

Harry Bunn, the husband of the testatrix, lived only about one month after her death and she left no lineal heirs. Her holographic will, with three codicils, was admitted to probate by an order which also appointed Bank of America National Trust and Savings Association executor.

In a proceeding to determine heirship, Mr. Bunn's administrator and 24 of his wife's collateral heirs claimed the residue of the estate, which amounts to about $35,000. The decree in their favor distributes one-half of the property to the husband's administrator and the remainder to the other claimants.

The will included the following: ''At Harry's death, I want everything I have sold and given to a worthy charity, selected by my executors.'' The first codicil reiterates this provision by declaring: ''As I have already stipulated, I want everything at Harry's death sold and given to a worthy charity.'' One of the other two codicils, both of which bear the same date,

states: "I want my silver to be given my nieces and what is left given to charity by my Executor."

The appellant argues that these provisions are sufficient to create a valid charitable trust of which it is trustee. The respondents take the position that: (1) an executor is not entitled to appeal from a decree distributing property; (2) there was no intent to create a trust; (3) the attempted gift to charity is void under section 41 of the Probate Code; and (4) the designation of a beneficiary is too vague and indefinite to create a valid trust.

The first point of the heirs is based upon the assumption that the bank is prosecuting the appeal in its capacity as executor and they rely on authorities holding that an executor may not attack a decree of distribution. However, throughout the proceedings in the probate court, the bank retained separate counsel and studiously distinguished between its capacities as executor and as trustee. The appeal was taken by the bank as "the party asserting the right to act as Trustee under such will," and a trustee has the right to appeal from an order or judgment affecting the existence, modification or termination of a trust. (*Estate of Ferrall, ante,* p. 202 [200 P.2d 1]; *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177 [187 P. 425].) Such an attack "is not one involving the conflicting interest of beneficiaries or others, under the terms of the trust, but one going to the very existence of the trust itself. It is not only the right of the trustee to protect the trust estate, it is its duty as well. If the . . . [contestant of the dispositive provisions] be correct the entire plan of the deceased as declared in her will is destroyed." (*Estate of Hubbell,* 121 Cal.App. 38, 40 [8 P.2d 530].)

The respondents argue that as there has been no distribution of the corpus to the alleged trustee, the bank does not come within this rule. But if there is a valid trust, it was created by the testator and not by any order of the probate court. If the decision of the probate court is correct, then there is no trust and the bank has no trust to administer. If, on the other hand, the will created a valid trust and the decree is erroneous, the bank is a party aggrieved by the adverse order and is entitled to appeal from it. The issue as to the bank's status, therefore, goes to the merits of the case and cannot be determined preliminarily upon a precedural point.

It is next urged by the respondents, particularly the collateral heirs and distributees, that Mrs. Bunn had no intent

to create a trust in this case and all that is involved is the validity of an attempted direct bequest to an unspecified charity. From this, it is argued, there was an invalid attempt to delegate testamentary power. The contention is without merit. Whether a direct bequest or a trust has been created by the provisions of a will is entirely a question of the intention of the testator as derived from the language used; no particular words or phrases are necessary for the creation of a trust. (*Estate of McDole*, 215 Cal. 328 [10 P.2d 75]; *Estate of Shaw*, 198 Cal. 352 [246 P. 48]; *Kornbau* v. *Evans*, 66 Cal.App.2d 677 [152 P.2d 651]; *Estate of DeMars*, 20 Cal.App.2d 514 [67 P.2d 374].) Mrs. Bunn named the bank as executor and then provided that the residue of her estate, after the death of her husband, should be sold and the proceeds given to a charity to be selected by her executor. Thus, there is an express subject, purpose and beneficiary of the trust in addition to the existence of a trust intent which appears from the nature of the devise (Civ. Code, § 2221) and a specific designation of the bank as trustee.

The respondents' third contention is that under the provisions of section 41 of the Probate Code, which restricts charitable bequests, the trust, if valid, may be sustained only as to one-third of the estate. In answer to this argument, the bank relies upon section 43 of the Probate Code which declares that "[n]othing in this article contained shall apply to bequests or devises made by will executed at least six months prior to the death of the testator who leaves no spouse, child, grandchild or parent . . . ." and the undisputed evidence shows that the will and each of the codicils were executed well over six months before Mrs. Bunn's death.

Although the question as to who may assert the invalidity of a devise or bequest subject to the provisions of section 43 of the Probate Code has not been directly decided by the appellate courts of California, under the authorities in other jurisdictions the respondents cannot do so because they are not members of the designated class. "The prohibition contained in the statute is a limitation upon the right of a testator to dispose of his property in accordance with his own inclinations and desires. It should, therefore, be strictly construed against those seeking to invalidate testamentary provisions." (*In re Plaster's Will*, 266 App.Div. 439 [43 N.Y.S.2d 1, 3].) The Iowa Supreme Court considered hypothetically the situation here presented. "If such designated parties do not challenge the bequest to charity, it does not lie in the

mouth of any other person to challenge it. It may often happen that a testator will make a bequest to charity . . . and leave a surviving spouse, and the spouse will fully acquiesce in such charitable bequest and wish that the will be carried out in its entirety. Could it be said that, under the statute, the mere fact of the existence of a surviving spouse would enable some other person, such as a distant collateral heir, to challenge the bequest to charity? We think not.'' (*Karolusson* v. *Paonessa,* 207 Iowa 127 [222 N.W. 431, 433] ; see, also, *In re Korzeniewska's Estate,* 163 Misc. 323 [297 N.Y.S. 997] ; *Matter of Hills,* 264 N.Y. 349 [191 N.E. 12, 93 A.L. R. 1380].) Nor is the administratrix of the estate of Mrs. Bunn's husband in any better situation, for the right to contest a will on this ground has been held to be purely personal, to be narrowly restricted, and one which does not pass to the representative of a decedent as a part of his estate. (*In re Webster's Estate,* 178 Misc. 342 [33 N.Y.S.2d 862].)

The basic legal question in the case is whether a bequest to charity in general, with a power in the trustee to select the beneficiary, is too vague and indefinite to be upheld. First, of course, it is essential to distinguish between private trusts and those having a charitable purpose. ''In the case of a private trust there must be certainty as to the beneficiaries, but in charitable trusts individuals are not named, for the reason that, if named, the gift becomes a donation to individuals, and, losing the character of indefiniteness as to persons,—which is the essence of a charitable trust,—it is no longer a charitable trust. Inherent in every charitable trust is the very characteristic against which [respondents'] arguments point—namely, indefiniteness of beneficiaries.'' (*Fay* v. *Howe,* 136 Cal. 599, 601 [69 P. 423].)

It is argued by the respondents, however, that ''while indefiniteness as to *individual* beneficiaries is one of the characteristics of a charitable trust, it does not follow that *no degree* of certainty is required.'' No California case has been found which passes upon this proposition. *Estate of Hanson,* 3 Cof. Prob. Dec. 267, cited by the respondents, involved the invalidity of a proviso in a gift to the residuary beneficiary ''to dispose of in charities as he thinks best.'' The court based its holding of invalidity upon the fact that ''there was no trust attempted to be created,'' and, for that reason, the case is not here in point. The other California cases deal with charitable trusts in which there is some restriction upon the type of

charity. (*Estate of Peabody,* 21 Cal.App.2d 690 [70 P.2d 249] ["an institution for old people"]; *Estate of DeMars,* 20 Cal.App.2d 514 [67 P.2d 374] ["to the poor soldiers Letterman Hospital"]; *Estate of Bartlett,* 122 Cal.App. 375 [10 P.2d 126] [to enable such young man or young woman to pursue his or her studies]; *Estate of Hood,* 57 Cal.App.2d 782 [135 P.2d 383] ["sick, blind and those in need of support"]; *Collier* v. *Lindley,* 203 Cal. 641 [266 P. 526] [to improve government; assist education; for employer employee relations; etc.]; *Fay* v. *Howe, supra* ["aid of deserving aged native-born in the town of Southboro, Mass."].) However, in many jurisdictions, a gift to charity in general has been sustained. (*In re Jordan's Estate,* 329 Pa. 427 [197 A. 150]; *In re Planck's Estate,* 150 Wash. 301 [272 P. 972]; *Selleck* v. *Thompson,* 28 R.I. 350 [67 A. 425]; *Kirwin* v. *Attorney General,* 275 Mass. 34 [175 N.E. 164]; *Becker* v. *Fisher,* 112 Ohio 284 [147 N.E. 744]; *Souhegan Nat. Bank* v. *Kenison,* 92 N.H. 117 [26 A.2d 26].)

Perhaps the best discussion of this point is found in Professor Bogert's work on "Trusts and Trustees" where it is said: "Not infrequently a donor leaves property to a trustee for charity in general, without specifying any particular type of charity or any details of administration. The question then arises whether such a gift creates a good charitable trust. Must the settlor name a definite kind of charity or fix upon a specific type of benefit which he desires to confer upon humanity? Must he prescribe religion, or education, or relief of the poor, or some kindred means of working social good, or may he include within the objects of his charitable trust all possible charitable purposes and give to his trustee authority to select one or more types of charity?

"Whenever objection has been made to such broad trusts the ground of criticism has usually been said to be that the trust is too vague, uncertain, and indefinite to be enforceable. Obviously, if any trust, private or public, is attempted to be created by such equivocal or meaningless language that the court cannot understand the settlor's intent with reasonable certainty, the court may decline to enforce the trust . . . Is a trust for 'charity' vague or indefinite in this sense? Can a court understand what a settlor had in mind by such a term and know whether acts of a trustee alleged to be in performance of the trust are in fact in execution of it or in breach of it? Can a court practically supervise the administration of such a broad trust?

"Patently a trust for charity in general is extremely broad. The human beings to be aided may consist of all humanity, or any part of it in any country. There are thousands of acts which may be done which would be declared 'charitable' by a court of equity. Does the extremely wide choice and broad discretion vested in the trustee create a vice in the trust which makes it impossible or undesirable of enforcement by the court?

"It is believed that there is no objectionable uncertainty about such a general charitable trust. The trustee of it is under a duty to select any one of the hundreds or thousands of means open to him to benefit mankind in such a way as to bring about a charitable result . . . The decisions of the courts in England and in this country can be studied and will guide the trustee to a decision as to what is and what is not charitable . . . There need be no doubt or ambiguity in the trustee's mind as to his duty . . .

"There are numerous cases supporting as sufficiently definite and otherwise valid gifts to a trustee for charity in general, with authority in the trustee to select particular objects, purposes, or institutions, but with no guide furnished him as to the particular type or class of charity which the settlor desired. In some of these cases there is no limitation whatever on the trustee's discretion, the whole world being open to him. . . . Undoubtedly such a trust is harder for a trustee to carry out than a limited charitable trust for a stated charitable purpose; and probably the supervision of such a trust may be somewhat more onerous than that of watching the trustee of a narrowly defined charity; but there would seem to be no impossibility, and . . . nothing short of impossibility of execution and enforcement should cause a court to defeat the settlor's intent and to decline to support the trust." (2 Bogert, Trusts and Trustees, § 371. 1134-42.)

Applying the reasoning of Professor Bogert, which rests upon sound principles of law and a proper regard for generous intentions to help persons in need of a practical expression of brotherhood, the trust established by Mrs. Bunn should be upheld. "Courts look with favor upon all attempted charitable donations and will endeavor to carry them into effect if it can be done consistently with the rules of law. A bequest intended as a charity is not void and there is no authority to construe it to be legally void if it can possibly be made good. *Estate of Hinckley,* 58 Cal. 457; *Estate of Willey,* 128 Cal. 1

[60 P. 471]; *Estate of Merchant,* 143 Cal. 537 [77 P. 475]."
(*Collier* v. *Lindley,* 203 Cal. 641, 654 [266 P. 526].) The concern of the respondents that there is no one "to keep the trustee honest" has no substantial foundation. The fact that there is no class of persons particularly interested in such a trust does not place it beyond the protection of a court of equity, and the enforcement of the requirements of the testatrix and an accounting of the corpus may be compelled by the attorney general. (*People* v. *Cogswell,* 113 Cal. 129 [45 P. 270, 35 L.R.A. 269].)

The order is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I concur in the judgment of reversal solely because I think the findings of fact and conclusions of law do not adequately resolve all material issues.

It should be pointed out, however, that the majority opinion quotes only such excerpts from the documentary evidence as the majority deem support their conclusion. Actually the evidence before the trial court, taken in its entirety, admits of materially conflicting inferences: the testatrix may or may not have intended to create a trust; she may or may not have intended certain bequests to be gifts absolute; she may or may not have intended certain bequests to be not absolute or in trust, but of a life estate with remainder over. An inference to be drawn from an established fact is evidence. (Code Civ. Proc., §§ 1957(1), 1958, 1960.) When established facts admit of opposing or inconsistent inferences the evidence, in that sense, is conflicting and the resolution of the conflicts should be left with the jury or trial judge.

I do not agree with the majority's disposition of the effect of section 43 of the Probate Code. That section by its express terms is applicable and operative only upon one of two specified contingencies: 1. When the testator "leaves no spouse, child, grandchild or parent"; or, 2. "[W]hen all of such heirs, by a writing executed at least six months prior to . . . [the testator's] death, shall have waived the restriction." Neither contingency is shown to exist here; the testatrix left her spouse surviving and there is no suggestion that he had "at least six months prior to" the testatrix's death (or at any other time) "by a writing . . . waived the restriction." Since section 43 is *not* operative section 41 *is* operative.