Strafford
No. 6959

ATTORNEY GENERAL BY G. WELLS ANDERSON,
DIRECTOR OF CHARITABLE TRUSTS

v.

ROCHESTER TRUST COMPANY, TRUSTEE u.w.
OF GEORGE P. FURBUSH & *a.*

February 28, 1975

*G. Wells Anderson,* by brief and orally, for the plaintiff.

*Cooper, Hall & Walker* and *C. Russell Shillaber (Mr. Shillaber* orally) for defendant Rochester Trust Company.

GRIFFITH, J. This is a bill in equity to require the defendant trustee to distribute certain excess income to the American Red Cross and the Salvation Army, charitable remaindermen of the residuary trust estate of the late George Furbush. The Trial Court *(Flynn,* J.) ruled that the petition sought deviation or termination of the trust estate and that the attorney general had no standing to seek such relief. Plaintiff's exception to this ruling was reserved and transferred by the trial court.

George P. Furbush died on April 10, 1956, and by his will left the residue of his estate in trust to the Rochester Trust Company. The trustee was directed to pay certain life annuities and twenty-five dollars per month to the First Methodist Church of Rochester. Upon the death of the last life annuitant the will directed continuation of the payment to the First Methodist Church, such sums as might be necessary to clean and repair gravestones in the Furbush lot in the Rochester cemetery and the balance of net income to be divided equally and paid monthly to the American Red Cross and the Salvation Army. Investments of the testator at his death which passed to the residuary trust were producing in excess of the amount required for the annuities and the will instructed the trustee to invest "the unexpended income . . . and any capital increment thereto" during the period of the annuities. From 1959 to 1972 the trustee transferred excess income in the amount of $112,411.71 to principal and the trust continues to produce excess income. The bill seeks to have the $112,411.71 distributed to the charitable remaindermen and all future excess income.

Plaintiff initially entitled the relief sought as "cy pres and deviation." Subsequently the bill was amended with an alternative prayer that the court order partial termination of the trust by distribution of the accumulated income.

RSA 498:4-a (Supp. 1973) provides that either the trustee or the attorney general may petition for an application of cy pres.

The trial court correctly ruled that since plaintiff did not seek to redirect the charitable trust funds to other than the charities named by the testator no application of the cy pres doctrine was sought. Restatement (Second) of Trusts § 399 (1959); RSA 498:4-a (Supp. 1973).

RSA 498:4 providing for deviation from the terms of a trust and RSA 498:4-e (Supp. 1973) providing for termination of charitable trusts permit but do not require application be made by the trustee to the superior court. The trial court ruled that there was no common law power in the attorney general to apply for deviation or termination and in the absence of statutory authority the attorney general lacked standing to maintain the present action.

The ruling of the trial court relied upon language in *Souhegan National Bank v. Kenison*, 92 N.H. 117, 122, 26 A.2d 26, 30 (1942). We do not read this case as a limitation on the common law authority of the attorney general to bring such actions for the benefit of charities as the public good may require. The court's refusal to impose common law duties of charitable supervision on the attorney general was dictated by the situation in 1942 when the attorney general's office was "unorganized and unequipped to enforce such trusts". *Id.* at 122, 26 A.2d at 30. Since the creation of the office of director of charitable trusts, the pragmatic reasons for the apparently restrictive language of the *Souhegan* case no longer exist, and the attorney general's powers have been increased by statute.

The statute creating the office of the director of charitable trusts does not impose any statutory limitations on the common law powers of the attorney general but expressly includes them in addition to his statutory powers. RSA 7:6, 20-31 (Supp. 1973). The common law powers of the attorney general are broad *(State v. Swift,* 101 N.H. 340, 342-43, 143 A.2d 114, 116 (1958)), and not restricted by specific statutory duties. *Fletcher v. County,* 71 N.H. 96, 102, 51 A. 271, 272-73 (1901). At common law it was the duty of the attorney general "to see that the rights of the public in the [charitable] trust were protected and that it was properly executed". *Petition of Burnham,* 74 N.H. 492, 494, 69 A. 720, 721 (1908). It is well settled that the attorney general is a necessary party in any proceedings involving cy pres, or deviation or termination of charitable trusts. *Concord Nat'l Bank v. Haverhill,* 101 N.H. 416, 145 A.2d 61 (1958); *Burtman v. Butman,* 94 N.H. 412, 54 A.2d 367 (1947). We hold that the attorney general is not only a necessary party in such cases but may also be the initiating party.

It should also be noted that the trial court's ruling that the attorney

general had no standing did not require a dismissal of the petition since we hold that the charities became parties. Their execution through their officers of a stipulation for a decree could properly be considered a pro se appearance and a request for affirmative relief. *See Stebbins v. Lancashire Ins. Co.*, 59 N.H. 143 (1879); *cf. Moylan v. Lamothe*, 92 N.H. 299, 30 A.2d 11 (1943).

Accordingly we remand this case to the trial court for determination of whether deviation or partial termination is appropriate. *See* Restatement of Property § 442 (1944); Restatement (Second) of Trusts § 401, Comment *k* (1959); 4 A.W. Scott, Trusts § 401.9 (3d ed. 1967); 6 Bogert, Trusts § 352 (2d ed. 1953); RSA 292-B:7-II (Supp. 1973).

*Remanded.*

GRIMES, J., did not sit; the others concurred.