Merrimack, ⎫
Nov. 7, 1901. ⎭

### FLETCHER *v.* MERRIMACK COUNTY.

A county solicitor who draws complaints and issues warrants in cases which it is his duty to prosecute is not entitled to fees as a justice of the peace, in addition to the salary fixed by statute.

CLAIM, for fees. The claimant during his term of office as county solicitor drew the complaints and issued the warrants in various cases which it was his duty to prosecute. He asked to be paid by the county one dollar and fifty cents for each complaint and warrant in addition to his salary as solicitor. The claim was disallowed, and he excepted. Transferred from the April term, 1901, of the superior court by *Peaslee,* J.

*George M. Fletcher, pro se.* "Justices of the peace and justices of police courts shall be allowed in criminal cases, for drawing a complaint, one dollar; for a warrant founded on a complaint for any offence, fifty cents." P. S., *c.* 287, *s.* 2. In a criminal case begun by complaint the warrant must be issued by a justice of the peace or a police court. It cannot be issued by the solicitor or any

other officer. It would seem that the claimant — the justice who: issued the warrants in these cases — is clearly entitled to the fee of fifty cents for each warrant.

"Criminal proceedings before a justice or police court shall be begun by complaint, signed and under oath, addressed to such justice or court, briefly setting forth, by name or description, the party accused, and the offence with which he is charged. The justice or court, upon such complaint, may issue a warrant for the arrest of the person so charged with an offence committed or triable in the county." P. S., c. 248, ss. 9, 10. The justice should give some proper consideration to the nature of the accusation and the evidence by which it is sustained before issuing the warrant of arrest. *Rex* v. *Simons*, 6 C. & P. 540; *Bellinger* v. *People*, 8 Wend. 595; *Broadstreet* v. *Ferguson*, 17 Wend. 181; *People* v. *Lynch*, 29 Mich. 274; *Redmond* v. *State*, 12 Kan. 172. The complaint must adequately state an offence. *Moore* v. *Watts*, Breese 18; *Haush* v. *People*, 75 Ill. 487; *Taylor* v. *State*, 32 Ind. 153.

The justice stands between the people and reckless prosecutions. No person can be arrested for any offence except upon indictment by a grand jury, an information by the attorney-general or solicitor, or a complaint before a justice of the peace. In the latter case it is the duty of the justice to consider the evidence by which the complaint is sustained, to decide what offence, if any, has been committed, and the proper form in which such offence should be charged.

When the justice has decided all these questions, the complaint, in legal contemplation, has been substantially drawn. All that remains to be done is the mechanical labor of putting it upon paper — the work of a mere scrivener. We take it that the fee of one dollar is not for the scrivener's work, but for the work of the justice, calling for some legal knowledge and the exercise of a sound discretion.

"Every solicitor, upon receiving the written statement under oath of any person of good character, that he knows or believes any designated person is guilty of a violation of any provision of this chapter [P. S., c. 112] or amendment thereto, reciting the probable source of proof of such violation, shall, if any person of good character will make the necessary complaint, forthwith institute a prosecution against such person for the offence. If any solicitor shall refuse or unreasonably neglect to draw such complaint and institute such prosecution after receiving such statement, he shall be fined or forfeit three hundred dollars for every such refusal or neglect." Laws 1895, c. 87, s. 2. Does this statute cast upon the solicitor the duty of drawing complaints alleging

violations of chapter 112 of the Public Statutes, when certain described written statements under oath have been presented to him? Can the solicitor draw a complaint in the sense in which we use the word " draw "? Speaking generally, the solicitor can and does consider the evidence which supports the complaint and the correctness of the charge, and decides whether or not he should prosecute the case after a warrant has been issued, exercising his discretion in the matter; but he does not exercise any such discretion in issuing the warrant for the obvious reason that he does not and cannot issue it. So, generally speaking, he exercises no discretion in drawing the complaint, because he cannot draw it. Probably no one, before the passage of the statute above quoted, ever thought the solicitor, as a solicitor, drew the complaint. Does that statute vest any new power in, or impose any new duty upon, the solicitor? Does it transfer to the solicitor the powers and duties of a justice in drawing a complaint? It would seem that if such important powers and duties were to be vested in him that the legislature would have said so in plain terms and not have left it to be inferred.

If A comes to B, a solicitor, with a statement under oath alleging a violation of chapter 112 of the Public Statutes, B, as solicitor, at most can only write out a complaint in the form that he deems proper. Take A before C, a justice, and inform C that if he issues a warrant B will indorse it, making the county responsible for costs, that he will summon witnesses, and attend to the trial of the case: the duties of C, the justice, are exactly the same as they would be if A had come to him alone — to ascertain the evidence which would support his statement, consider what offence had been committed, and the proper language in which to charge it. The writing brought by the solicitor in the first instance might assist him so far as choosing the proper language in which to state the offence ; but he must exercise his judgment in adopting it, as he would a form in a book.

The case has been considered upon the supposition that the two offices of solicitor and justice are held by two persons, but we suppose that the duties of the two offices are as distinct and independent when held by one person as when held by two. The compensation of a justice consists of fees only, and he cannot be deprived of those because he happens to hold another office to which is attached a salary.

*David F. Dudley*, solicitor, for the defendants.

CHASE, J. The province of New Hampshire was divided into counties in 1771. Prov. Laws, *ed.* 1771, *c.* 137. By the act of

June 19, 1789, the president of the state, with the advice of the council, was empowered to appoint in each county a solicitor to act in behalf of the state, who, in the absence of the attorney-general, should have all his powers and authority and be entitled to "all the fees and perquisites thereunto belonging." Laws, *ed.* 1815, *p.* 115. This appears to be the origin of the office of county solicitor. It does not appear what the "fees and perquisites" referred to were. In 1819, a resolution was passed by which $800 was to be paid from the state treasury to the attorney-general annually for his services, provided that if he was absent from, or neglected to perform his duties at, any term of court, the solicitor was to be paid $60 for performing the duties, and the sum so paid was to be deducted from the attorney-general's salary. Laws 1819, *c.* 58. In 1829, the duty of auditing claims against counties and taxing bills of costs in state and county actions was imposed upon solicitors, and it was provided that they should be paid reasonable compensation therefor from the county treasuries. Laws, *ed.* 1830, *p.* 71. The compensation of solicitors continued to be paid in accordance with this general plan — in part from the state treasury and in part from the county treasuries — until 1861, when it was enacted that they should receive no compensation from the state, but should receive the sums specified in the act from their respective counties "in full compensation for all services rendered and expenses incurred by them in the discharge of all the duties of their office." R. S., *c.* 228, *ss.* 10, 11; Laws 1861, *c.* 2486, *ss.* 1, 3. This, in substance, continued to be the law until the enactment of the Public Statutes. The provision then adopted and now in force (excepting that the amount of salary has been changed in some instances) is: "The annual salaries of the solicitors in the several counties, to be in full for their services and expenses while in the discharge of their duties, shall be as follows:" [Naming them.] P. S., *c.* 286, *s.* 17. The salaries are payable from the county treasuries. *Ib.*, *s.* 20. The change made in the wording of the statute is one of form merely. The salaries specifically provided are therefore full compensation for all services rendered and expenses incurred in the discharge of all the duties of the office.

The duties of the office, according to the act of 1789, were the exercise of "all the powers and authority of the attorney-general" in his absence. At first there was no statute defining the powers and authority of the attorney-general; but there had been such an officer in England for centuries prior to the settlement in this colony, and the powers and duties of the office had become well established. An attorney-general was appointed in the colony as early as 1683 and there has been one ever since, except perhaps

during temporary vacancies in the office. Among the powers and duties of the office by the common law was the prosecution of persons for crimes and misdemeanors. The attorney-general might file an information for a misdemeanor, or not, according to his discretion, with the exercise of which the court did not intermeddle unless moved to do so by him. *Rex* v. *Philipps,* 3 Bur. 1564; *Rex* v. *Phillips,* 4 Bur. 2089.

The first attempt in this state to define the duties of the attorney-general by statute was made upon the revision of the statutes in 1842, in these words: " The attorney-general shall prosecute all indictments and informations, and defend all suits and processes against the state." R. S., *c.* 13, *s.* 2. This was amended in 1881 so as to read as follows: " The attorney-general shall prosecute all indictments and informations, and institute and defend all suits and processes to which the state is a party; shall exercise general supervision and direction over the county solicitors," etc. Laws 1881, *c.* 82, *s.* 1. In the Public Statutes the provision is: " He shall act as attorney for the state in all criminal and civil causes in the supreme court in which the state is interested." P. S., *c.* 17, *s.* 4. That he is still clothed with authority to direct solicitors appears from the following provision prescribing their duties: " The solicitor of each county shall be under the direction of the attorney-general; and in the absence of the latter, he shall perform all the duties of the attorney-general's office for the county." P. S., *c.* 17, *s.* 6. It will be noticed that the terms of these provisions are very general; they do not purport to enumerate all the duties pertaining to the respective offices. If it was the duty of these officers to assume the control of criminal proceedings only after the proceedings had passed the preliminary stage and reached the higher court, the administration of the criminal law would be sadly defective. It has been said that " neither the selectmen nor an individual can institute and carry on proceedings for a violation of any law, except under the established forms of complaint and indictment, controlled and managed by the public officers of the state, provided for the conduct and administration of the criminal law." *Northumberland* v. *Coos,* 51 N. H. 557, 558. " Ordinarily prosecutions for crimes and offences are carried on by the officers of the county, and at its expense. There is no legal duty imposed upon an individual to engage in a criminal prosecution, either at his own or the public expense." *Batchelder* v. *Rockingham County,* 66 N. H. 374. It has been the practice for many years for county solicitors, and in some cases the attorney-general, to begin prosecutions for offences of a serious nature and attend the preliminary hearings before the magistrates. In some cases they have not exercised the initiative in person, but have directed

or authorized others to do it. The power to institute proceedings is recognized in an early statute providing for the payment of compensation by the county for services " done under the direction of either of the courts aforesaid [superior court of judicature and courts of common pleas], the attorney-general, one of the solicitors, or any justice of the peace, in apprehending and bringing to justice any offender charged with any felony or high-handed misdemeanor against the laws of this state " (Laws, *ed.* 1815, *p.* 341); also, by the rule of court which provides that no bills of costs in proceedings before magistrates shall be allowed " unless an indictment be found in the case, or the prosecution be instituted by the authority and under the direction of the attorney-general or the solicitor for the county." 56 N. H. 598.

The statutes specially make it the duty of county solicitors to institute and prosecute criminal proceedings in the following cases : for violations of the law for the suppression of intemperance (Laws 1855, *c.* 1658, *s.* 6 ; Laws 1895, *c.* 87, *s.* 2) ; for failures of city and town officers to comply with the requirements of the " dog law " (Laws 1891, *c.* 60, *s.* 13); for violations of the act to prevent the adulteration of candy (Laws 1899, *c.* 26, *s.* 3) ; for the neglect of town clerks to make returns of the votes cast for governor and other officers (P. S., *c.* 39, *s.* 2 ) ; and for bribery at elections. P. S., *c.* 39, *s.* 22. The statute imposing the duty in respect to violations of the prohibitory liquor law is quite particular in its provisions. " Every solicitor, upon receiving the written statement, under oath, of any person of good character, that he knows or believes any designated person is guilty of a violation of any provision of this chapter or amendment thereto, reciting the probable source of proof of such violation, shall, if any person of good character will make the necessary complaint, forthwith institute a prosecution against such person for the offence. If any solicitor shall refuse or unreasonably neglect to draw such complaint and institute such prosecution after receiving such statement, he shall be fined or forfeit three hundred dollars for every such refusal or neglect." Laws 1895, *c.* 87, *s.* 2. In all these cases, if the solicitor receives reasonable information that there has been a violation of the law, it is his duty to draw a complaint and cause the offender to be arrested, and to prosecute him, subject perhaps to the exercise in good faith of his discretion based upon his view of the sufficiency of the evidence or other considerations. It is not necessary in this case to inquire whether he may exercise his discretion in such cases ; nor if so, to what extent.

There is nothing in any of these statutes tending to prove an intention on the part of the legislature to take from the attorney-general and county solicitors (who are his deputies so far as local

criminal proceedings are concerned) any of the powers which they possessed under the common law, or to relieve them from the performance of any of the common-law duties pertaining to the office. The statutes last mentioned show a purpose to treat the offences referred to in them as of sufficient importance to call for an exercise of the power incident to the office of beginning criminal proceedings, rather than a purpose to limit the powers of the office. All the powers and duties prescribed by the general and special provisions of the statutes and by the common law pertain to the office of attorney-general, and so to the office of county solicitor so far as the solicitor is authorized to act in the attorney-general's stead. *People* v. *Miner*, 2 Lans. 396 ; *Hunt* v. *Railway*, 20 Ill. App. 282, 287 ; *Parker* v. *May*, 5 Cush. 336, 338.

Whenever the attorney-general or a solicitor makes a complaint and warrant and causes an offender to be arrested thereupon, it will be understood that he acts in his official capacity. It would be inconsistent with well-settled principles of public policy for him to act in the proceeding for a time as attorney for the complainant, and then as public prosecutor. The complainant is often actuated by pecuniary motives or a spirit of revenge; the state acts solely for the public good. The complainant is liable to limit his view of the matter to its effect upon himself and his particular interests, and to lose sight of the rights of the respondent; the state regards the rights of the respondent as well as those of the complainant, and in addition thereto the rights of the public. If an attorney who had served the complainant undertook afterward to serve the state in the same proceeding, there would be great liability that prejudices and a spirit of partisanship in behalf of the complainant, engendered in the first employment, would affect his acts as public prosecutor.

But the attorney-general, or a solicitor as such, has no authority to swear the complainant to the truth of the complaint, or to issue a warrant for the arrest of the respondent. It is only when he is also a justice of the peace that he can perform these acts, and then only in that capacity. The statute provides that justices of the peace shall be allowed " for drawing a complaint, one dollar," and " for a warrant founded on a complaint for any offence, fifty cents " (P. S., *c.* 287, *s.* 2) ; and the question raised in the case is whether the claimant is entitled to these fees in addition to his salary. It is assumed that he was a justice of the peace as well as solicitor. The principal thing which the claimant did — the thing regarded by the law as done in the performance of his duty as solicitor — was the beginning of criminal proceedings in the cases referred to. The swearing of the complainant and the issuance of the warrant, although necessary (Bill of Rights, *art.* 19 ;

P. S., c. 248, ss. 9, 10), were mere incidents to the principal undertaking. The claimant made use of an outside power that he happened to possess, in the performance of his official duties as solicitor. Although the issuance of a warrant is a judicial act involving a decision of the question whether there are reasonable grounds to suspect the respondent of having committed the offence charged in the complaint (6 Chit. Burns' J. 152 ; 1 Chit. Cr. L. 33, 34), the same question must be decided by a solicitor in the performance of his duties. There is no inconsistency between the duties of the two offices as to this matter.

It is reasonably certain that the provision by which the salary of the office is to be in full for the services rendered in the discharge of its duties was intended by the legislature to include services in drawing complaints in cases in which they expressly make it the duty of solicitors to draw them. The existence of the intention in respect to these cases goes a long way toward proving that they had the same intention in respect to complaints drawn by solicitors in other cases. No good reason can be suggested for a difference in this particular between complaints drawn in the performance of an express statutory duty and complaints drawn in the performance of a common-law duty. Nor can any sound reason be suggested for allowing a fee for the issuance of a warrant when no fee is allowed for drawing the complaint upon which the warrant was issued. The complaint and warrant go together, and are usually drawn by the same person. It would be a fine distinction to disallow the fee for one and allow it for the other, so fine that it is altogether improbable that the legislature would make it. By providing that the salary should be full payment for all services rendered in the discharge of the duties of the office, the legislature removed from solicitors all temptation " to swerve from the straight line of official duty." Reading the statute as to fees and the statute as to solicitors' salaries together, in the light of the law relating to the office and to public policy, it appears that the intention was to make the salary full payment for drawing complaints and issuing warrants, when the solicitor happened to be a justice of the peace and performed those services, the same as for appearing before the magistrate at the preliminary hearing, or drawing the indictment and attending to the subsequent prosecution of the case. If fees for the complaint and warrant are taxed against the respondent and paid by him, they belong to the county or city which receives them, the same as in some cases fees for like services rendered by city solicitors and police judges belong to the city of which they are officers. *Fernald* v. *Dover*, 70 N. H. 42.

*Exception overruled.*

WALKER, J., doubted: the others concurred.