Ramsay v. McCormack                    CV-98-408-JD   06/29/99
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE

Ronald G. Ramsay

     v.                                 Civil No. 98-408-JD

David S. McCormack, et al.


                           O R D E R


     The plaintiff, Ronald Ramsay, brought this action asserting

claims under state law and 42 U.S.C.A. § 1983.  Before the court

is the motion of defendants Grafton County and Kenneth Anderson,

in his official capacity, for judgment on the pleadings (document

no. 16).[1]


                          Standard

     A motion for judgment on the pleadings will be granted if,

accepting all of the plaintiff's factual averments contained in

the complaint as true, and drawing every reasonable inference

_____

     [1]The complaint alleges that the county was the employer of
Anderson and the plaintiff has sued Anderson in his official and
individual capacity.  There are no direct claims against the
county.  "[A] suit against a government officer in his official
capacity is the same as a suit against the entity of which the
officer is an agent."  McMillian v. Monroe County, 520 U.S. 781,
785 n.2 (1997) (citations and quotations omitted).  In this
regard, therefore, the complaint is redundant, and the motion is
properly construed as a motion by the county, not Anderson, for
judgment on the pleadings.  See infra.

helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). The court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

Background

The events described herein are allegations asserted by the plaintiff in his amended complaint and do not constitute findings of fact of the court.

On July 4, 1995, defendants Lieutenant Davis and Officer Gilpatric, both of the Bridgewater Fire Department, entered the private property of the plaintiff's son and approached the plaintiff's camp on the property. They confronted the plaintiff and insisted that the plaintiff produce a campfire permit for their inspection. Although the plaintiff initially refused to produce the permit as there was no fire on the property, nor had there been one that day, the plaintiff ultimately complied with the fire officers' demand. Davis and Gilpatric then left, although they stated that they would return with a police

2

officer.

Davis, Gilpatric, and Officer McCormack, a New Hampshire State Police officer, then returned to the property. The three men entered the property, allegedly without probable cause, to subdue and arrest the plaintiff, whom they found driving a truck across the property. After the plaintiff refused to produce his driver's license for McCormack, he was arrested for disobeying an officer. An altercation then ensued wherein McCormack pulled the plaintiff from his truck, handcuffed him, pushed him face forward against the truck, and sprayed pepper spray in the plaintiff's face. The plaintiff, who suffered from a heart condition, began experiencing chest pains and collapsed. The defendants laughed at the plaintiff while a guest of the plaintiff administered nitroglycerin pills. The plaintiff was then placed in defendant Davis's pickup truck and taken from the property.

As a result of the events of July 4, 1995, the plaintiff was charged with interference with fire control personnel, simple assault, disobeying an officer, and resisting arrest. The charges were brought with malice, in the absence of probable cause, and for purposes other than bringing the plaintiff to justice. The plaintiff was booked, fingerprinted, and jailed for an extended time, and required to appear before the Plymouth District Court on January 19, 1996. The plaintiff entered pleas

3

of not guilty to the charges pending against him.

Grafton County prosecutor Kenneth Anderson assumed responsibility for the plaintiff's prosecution. In the process of prosecuting the unfounded and malicious charges, McCormack, Gilpatric, Davis, and Anderson conspired to fabricate factual evidence and testimony. Blatant testimonial misrepresentations were made in an attempt to influence the court's opinion and impugn the plaintiff's character. Moreover, defendant Anderson allegedly misstated the law to the court, mis-characterized precedent, introduced evidence which he knew to be false, and repeatedly advanced arguments or adopted positions that were not reflective of the law.

The plaintiff's first trial in Plymouth District Court on October 11, 1996, ended in a mistrial. Anderson, who was instrumental in initiating the charges against the plaintiff, initially chose not to indict him on any felony charges. However, Anderson sought a felony indictment against the plaintiff after the mistrial. Ultimately, the plaintiff was found not guilty of every charge presented to a jury.

On July 1, 1998, the plaintiff brought this action against the defendants asserting violations of his constitutional rights and claims under state law. Relevant to the present motion, the plaintiff asserts that the prosecution was done with malice, was

4

wholly unfounded and without probable cause, employed, _inter alia_, false evidence and testimony, and was in violation of his substantive and procedural due process rights under the Fourteenth Amendment. Similarly, the plaintiff alleges that the defendants' conduct in distorting and corrupting the process of law violated his Fourteenth Amendment rights.

## Discussion

The county contends that it is entitled to judgment on the pleadings as to any claims brought against Anderson, in his official capacity, asserting that while the county employed the defendant as county attorney during the prosecution of the plaintiff, Anderson's prosecutorial duties were undertaken at the direction of the attorney general. Therefore, it contends, Anderson was acting as a "state actor" and the county is not a proper party to the action, citing McMillian v. Monroe County, 520 U.S. 781 (1997). The defendant also argues it is entitled to judgment on the grounds that section 1983 does not afford monetary relief against state officials acting in their official capacities.

As a preliminary issue, the court addresses the defendant's contention that it is entitled to judgment as the plaintiff has asserted a violation of his Fourteenth Amendment rights in

5

support of his section 1983 malicious prosecution claim in count six.[2]  In <u>Albright v. Oliver</u> the Supreme Court held that there was no substantive due process claim under the Fourteenth Amendment for malicious prosecution.  <u>See</u> 510 U.S. 266, 271, 275 (1994).  Moreover, because an adequate state law remedy for malicious prosecution exists, there is no section 1983 procedural due process claim for such a prosecution.  <u>See</u> <u>Reid v. State of New Hampshire</u>, 56 F.3d 332, 336 n.8 (1st Cir. 1995).

Nonetheless, the plaintiff's reliance upon the Fourteenth Amendment is not fatal to his section 1983 claim of malicious prosecution.  Under <u>Garita Hotel Ltd. v. Ponce Federal Bank</u>, the court may only grant a motion to dismiss under Rule 12(b)(6) "'if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  <u>Garita</u>, 958 F.2d 15, 17 (1st Cir. 1992) (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).  The standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion.  <u>See</u> <u>Republic Steel Corp. v. Pennsylvania Eng'g Corp.</u>, 785 F.2d 174, 182 (7th Cir. 1986).  As indicated by First Circuit jurisprudence, a section 1983 claim may lie on the basis

_____

[2]The court notes that the defendant did not raise this argument properly in its motion for judgment on the pleadings, but instead the issue was raised in the plaintiff's opposition to the defendant's motion, to which the defendant responded.

6

of a prosecution in derogation of the Fourth Amendment.  See Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999). Therefore, for the purposes of this order, the court construes the plaintiff's claim as one asserting a violation of the Fourth Amendment.


I.   Official Capacity Liability

In Monell v. Department of Social Services, 436 U.S. 658 692-94 (1978), the Supreme Court established that under 42 U.S.C.A. § 1983, municipalities cannot be held liable on a theory of respondeat superior, although they can be liable for injuries inflicted pursuant to an official government policy or custom. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. Such liability may be incurred as the result of a single decision where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinatti, 475 U.S. 469, 483 (1986).  However,

> the fact that a particular official--even a policy-making official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. See, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 822-824 (1985). The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

Id. at 482-84 (emphasis added).

The court's inquiry into whether an official was acting as a policymaker is a specific inquiry targeting "a particular area, or on a particular issue" of government business implicated by the suit. McMillian, 520 U.S. at 785. Necessarily, the court must also determine for which governmental entity, if any, the official made policy. See id. These inquiries are dependent upon state law. See McMillian, 520 U.S. at 786. Finally, the court's analysis into these issues is a functional one. See, e.g., Owens v. Fulton County, 877 F.2d 947, 950 (11th Cir. 1989).

Grafton County moves for judgment on the pleadings asserting that Anderson, in prosecuting the plaintiff, was not setting policy for the county, but was instead fulfilling his duties to the state attorney general. Its argument, therefore, is not predicated upon whether Anderson was a policymaker. Instead, it focuses on whether, if Anderson was a policymaker in fulfilling his criminal prosecutorial duties, he was a policymaker for the state or for the county. In other words, the county argues

8

Anderson was not "speak[ing] with final policymaking authority for the [county]" in his criminal prosecutorial role as county attorney.  <u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701, 737 (1989).

New Hampshire Revised Statutes Annotated ("RSA") § 7:34 (1988) defines the duties of the county attorney under New Hampshire law:

> The county attorney of each county shall be under the direction of the attorney general, and, in the absence of the latter, he shall perform all the duties of the attorney general's office for the county.  Under the direction of the county commissioners he shall prosecute or defend any suit in which the county is interested.  He shall tax all costs arising in state or county suits in his county for the consideration of the court.

Pursuant to this section, therefore, the county attorney acts at the direction of the attorney general and performs the attorney general's duties in his absence.  Indeed, county attorneys "have been considered as the attorney general's 'deputies, so far as local criminal proceedings are concerned,'" for over half a century.  <u>Wyman v. Danais</u>, 101 N.H. 487, 490 (1958) (quoting <u>Fletcher v. Merrimack County</u>, 71 N.H. 96, 101 (1901)).  However, he also represents the county in civil suits in which it is interested.  <u>See</u> <u>New Hampshire Bar Ass'n v. La Belle</u>, 109 N.H. 184, 185 (1968) ("Although the county attorney, however described, may be engaged primarily in criminal prosecutions, his

9

duties and functions also include civil litigations for the county (RSA 7:34) and other miscellaneous civil matters.").

Other statutory provisions and their subsequent interpretation by the New Hampshire Supreme Court also place the county attorney, in his role as criminal prosecutor, subordinate to and under the control of the attorney general. RSA § 7:11 (1988) provides that law enforcement officers "shall be subject to the control of the attorney general whenever in the discretion of the latter he shall see fit to exercise the same." In construing RSA §§ 7:6, 7:11, and 7:34, the New Hampshire Supreme Court determined that the statutes "place ultimate responsibility for criminal law enforcement in the attorney general, and give him the power to control, direct and supervise criminal law enforcement by the county attorneys in cases where he deems it in the public interest." See Wyman, 101 N.H. at 490.[3]

---

[3]RSA 7:6 (1998), titled "Powers and Duties as State's Attorney," provides:

> The attorney general shall act as attorney for the state in all criminal and civil cases in the supreme court in which the state is interested, and in the prosecution of persons accused of crimes punishable with death or imprisonment for life. The attorney general shall have and exercise general supervision of the criminal cases pending before the supreme and superior courts of the state, and with the aid of the county attorneys, the attorney general shall enforce the criminal laws of the state.

Funding and removal powers are also relevant to the court's considerations.  See McMillian, 520 U.S. at 788-91.  Although the county attorney is elected by the people of the county, see N.H. Const. Part 2, Art. 71, and is paid from the county treasury as determined by the county commissioners, see RSA § 23:5, the power to temporarily suspend the county attorney lies with the attorney general and the power to remove him lies with the superior court. See Eames v. Rudmond, 115 N.H. 91, 193 (1975) (citing RSA § 64:7).

The fact that the county attorney is an employee of the county, while material, is not dispositive.  As the Supreme Court stated in McMillian,

> This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy.  But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.

502 U.S. at 786.  Further factual development is not necessary to determine the county attorney's role in the context of this case. As is evident from the above discussion, the issue is one that turns on state law.  See McMillian, 520 U.S. at 786; Praprotnik, 485 U.S. at 124-25.  Moreover, the motion is one for judgement on

11

the pleadings.  See Federal Rule of Civil Procedure 12(c).[4]

The plaintiff argues, without authority, that there must be some affirmative act by the attorney general to control the prosecution of the case.  However, the fact that the county attorney is granted some discretion in prosecuting a case, and that his decisions in a particular case may not be reviewed by the attorney general, does not change the authority under which he acts, or the governmental entity for which he acts.  The Supreme Court has made clear that even in cases where an official has discretion to act, if he is not the final authority he is not the policy maker of the local governmental entity.  See Pembaur, 475 U.S. at 483; see also, Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) ("the official's decisions [must be] final and unreviewable and . . . not constrained by the official policies of superior officials.").[5]

---

[4]In any event, the court does not understand the plaintiff to maintain his objection on the basis of inadequate discovery given his receipt of previously outstanding interrogatories underlying the discovery argument, the fact that he did not maintain the discovery argument in response to the defendant's reply, and the lack of an attempt to further supplement the record as discovery progressed over the past five and a half months.

[5]The plaintiff's reliance on cases from other circuits, while appropriate for determining the applicable legal standards, are otherwise unpersuasive as the outcome of those cases is dependent upon the various state laws that control the officials. The plaintiff relies in particular upon Crane v. State of Texas, 766 F.2d 193, 195 (5th Cir. 1985).  Crane is readily

12

Finally, the plaintiff argues that the prosecution of the plaintiff in Plymouth District Court was not under the attorney general's supervision, relying upon RSA § 7:6.

> The attorney general shall have and exercise general supervision of the criminal cases pending before the supreme and superior courts of the state, and with the aid of the county attorneys, the attorney general shall enforce the criminal laws of the state.

RSA § 7:6 (1998). New Hampshire Supreme Court jurisprudence construing section 7:6 in the context of other relevant statutory sections, particularly section 7:11, does not support the plaintiff's argument.

In Wyman, the New Hampshire Supreme Court rejected the argument, premised upon section 7:6, that the attorney general only had supervisory control over the prosecution of the crime of embezzlement, which carried a maximum term of five years imprisonment.[6] The court, relying in part on section 7:11 and quoting Fletcher, explicitly reaffirmed the status of county attorneys as deputies of the attorney general in "local criminal

distinguishable in that a district attorney in Texas is responsible for "the prosecution of serious crimes," the authority for which "he exercises alone and without responsibility to the State attorney general, who has no general prosecutorial powers." Id.

[6]The court notes the amendment of RSA § 7:6 in 1996, although the parties do not argue the amendment is material to the issue before the court.

13

proceedings." Wyman, 101 N.H. at 490 (quoting Fletcher, 71 N.H. at 101). This is consistent with the broad language in Wyman that the attorney general has "ultimate responsibility for criminal law enforcement" and "the power to control, direct and supervise criminal law enforcement by the county attorneys in cases where he deems it in the public interest." Wyman, 101 N.H. at 490. Similarly, in In re Ash, 113 N.H. 583 (1973), the court expansively defined the authority of the county attorney as it derives from his role as a deputy of the attorney general, and therefore implicitly defined the attorney general's authority as well:

> Since RSA 7:11 recognizes prosecutorial discretion in the attorney general and subjects all law enforcement personnel to his control, see Wyman v. Danias, supra, it is reasonable to conclude that the county attorney as his deputy has authority over the sheriff. The same is true concerning the relationship between the county attorney and local police in that the latter as law enforcement personnel receive their authority by virtue of State law. See RSA 105:3. Thus, both the sheriff and the local police have a duty to act in accordance with the county attorney's concept of law enforcement.

In re Ash, 113 N.H. at 587. The court concludes that New Hampshire Supreme Court precedent concerning the authority of the attorney general, establishing the county attorney as the deputy of the attorney general in local criminal proceedings, its expansive interpretation of section 7:11, and the second clause of section 7:6 which broadly states "the attorney general shall

14

enforce the criminal laws of the state," compels the conclusion that the county attorney functions under the authority of the attorney general in criminal prosecution in the district courts.

Therefore, the court rules that in fulfilling his criminal prosecutorial duties, the county attorney acts pursuant to authority vested by state law in the attorney general and under the control of the attorney general, and does not function as a final policy maker for the county.[7]  Moreover, it has previously been determined by this court that county attorneys, when fulfilling their criminal prosecutorial duties under the direction and control of the attorney general, do not act as final policymakers for section 1983 liability purposes.  See St. Louis v. Eldredge, CV-95-178-B slip op. at 8-9 (D.N.H. March 31, 1997) ("it is clear that the attorney general, and not individual county attorneys, are the final policymaking authority, for the attorney general's office retains the power at all times to intervene and prevent a prosecution commenced in violation of a defendant's constitutional rights"); see also, D'Amour v. Blake, CV-95-194-JD slip op. at 6 (D.N.H. April 18, 1997).  Claims

---

[7]Nor are the dual hats worn by the county attorney for varying responsibilities incongruous.  See, e.g., Owens, 877 at 952 ("We have previously acknowledged that an official may simultaneously exercise county authority over some matters and state authority over others.").

15

against Anderson in his official capacity premised upon his alleged policy making authority therefore must fail.

## Conclusion

In light of the above discussion, the court grants the county's motion for judgment on the pleadings on the plaintiff's section 1983 claims and dismisses all claims against defendant Anderson in his official capacity (document no. 16).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

June 29, 1999

cc:  Peter G. McGrath, Esquire
      Martha A. Moore, Esquire
      Douglas N. Steere, Esquire
      R. Matthew Cairns, Esquire